393 A.2d 1155

**Helen WILLING, Appellant,**

v.

**Carl M. MAZZOCONE and Charles F. Quinn, Individually and t/a Mazzocone & Quinn, p. c. and Mazzocone & Quinn, p. c., Appellees.**

Supreme Court of Pennsylvania.

Submitted April 11, 1978.

Decided Oct. 5, 1978.

378

Community Legal Services, Inc., Henry J. Sommer, Douglas G. Dye, Elliot B. Platt, Philadelphia, for appellant.

Harold B. Marcus, Philadelphia, for appellees.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

On Monday, September 29, and Wednesday, October 1, 1975, appellant, Helen Willing, demonstrated in the pedestri-

an plaza between building number two and building number three, Penn Center Plaza, downtown Philadelphia, Pennsylvania. The plaza is bounded by 15th and 16th Streets, Market Street, and John F. Kennedy Boulevard, and is a well traveled pedestrian pathway between the two court buildings located at City Hall and at Five Penn Center Plaza. While engaged in this activity, which lasted for several hours each day, appellant wore a "sandwich-board" sign around her neck. On the sign she had hand lettered the following:

LAW—FIRM
of
QUINN—MAZZOCONE
Stole money from me—and
Sold-me-out-to-the
INSURANCE COMPANY

As she marched back and forth, appellant also pushed a shopping cart on which she had placed an American flag. She continuously rang a cow bell and blew on a whistle to further attract attention.

Appellees in this case are two members of the legal profession, Carl M. Mazzocone and Charles F. Quinn, who are associated in the two member law firm of Mazzocone and Quinn, p. c. When appellant refused appellees' efforts to amicably dissuade her from further activity such as that described above, appellees filed a suit in equity in the Court of Common Pleas of Philadelphia County seeking to enjoin her from further demonstration. Three hearings were held, at which the following factual history emerged.

In 1968, appellees, who have specialized in the trial of workmen's compensation matters for several years, represented appellant in such a case. Pursuant to appellees' representation, appellant was awarded permanent/partial disability benefits which she collected for a number of years. At the time of the initial settlement distribution with appellant, appellees deducted the sum of $150.00 as costs of the case. This sum, according to appellees' evidence, was paid in

full to Robert DeSilverio, M.D., a treating psychiatrist who testified on appellant's behalf in the Workmen's Compensation matter. Appellees presented copies of their records covering the transaction with Dr. DeSilverio. A cancelled check for the amount of the payment, and the testimony of Dr. DeSilverio himself, confirmed appellees' account of the transaction. Appellant offered no evidence other than her testimony that the cause of her antagonism towards appellees was not any dissatisfaction with the settlement, but rather, her belief that appellees had wrongfully diverted to themselves $25.00 of the $150.00 that was supposed to have been paid to Dr. DeSilverio.

Based on this evidence, the equity court concluded that appellant was ". . . a woman firmly on the thrall of the belief that [appellees] defrauded her, an *idee fixe* which, either by reason of eccentricity or an even more serious mental instability, refuses to be dislodged by the most convincing proof to the contrary." The Court then enjoined appellant from

> ". . . · further unlawful demonstration, picketing, carrying placards which contain defamatory and libelous statements and or uttering, publishing and declaring defamatory statements against the [appellees] herein."

On appeal, the Superior Court modified the trial court's order to read,

> "Helen R. Willing, be and is permanently enjoined from further demonstrating against and/or picketing Mazzocone and Quinn, Attorneys-at-Law, by uttering or publishing statements to the effect that Mazzocone and Quinn, Attorneys-at-Law stole money from her and sold her out to the insurance company."

> *Mazzocone v. Willing*, 246 Pa.Super. 98, 109, 369 A.2d 829, 834 (1976).

We granted appellant's petition for allowance of appeal, and now reverse.

■ This case raises serious and far reaching questions regarding the exercise of the constitutional right to freely express oneself. We believe the orders issued by the Superi-

or Court and by the trial court in the instant case are clearly prohibited by Article I, Section 7 of the Pennsylvania Constitution and by *Goldman Theatres v. Dana,* 405 Pa. 83, 173 A.2d 59, *cert. denied,* 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961). In *Goldman Theatres* we held that Article I, Section 7 prohibits prior restraint on the exercise of an individual's right to freely communicate thoughts and opinions, saying,

> "[a]part from the Fourteenth Amendment [to the United States Constitution], the guarantee of free communication of thought and opinion is independently protected by our State Constitution of 1874."

405 Pa. at 87, 173 A.2d at 61.

Article I, Section 7 of the present Constitution of the Commonwealth is based directly on a comparable article and section of the Constitution of 1874, and reads in relevant part:

> "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty."

As we emphasized in *Goldman Theatres,* Article I, Section 7, of the Pennsylvania Constitution is designed

> ". . . *to prohibit the imposition of prior restraints upon the communication of thoughts and opinions,* leaving the utterer liable only for an abuse of the privilege." (Emphasis added.)

405 Pa. at 88, 173 A.2d at 62.

History supports the view that the framers of our state constitution intended to prohibit prior restraint on Pennsylvanians' right to speak.

> "After the demise in 1694 of the last of the infamous English Licensing Acts, freedom of the press, at least freedom from administrative censorship, began in England, and later in the Colonies, to assume the status of a 'common law or natural right.' See *State v. Jackson,* Or. 1960 [224 Or. 337], 356 P.2d 495, 499. Blackstone so recognized (circa 1767) when he wrote, 'The liberty of the press is indeed essential to the nature of a free state; but

this consists in laying no previous restraints upon publications, and not in freedom from censure for criminal matter when published. Every freeman had an undoubted right to lay what sentiments he pleases before the public; to forbid this is to destroy the freedom of the press; but if he publishes what is improper, mischievous, or illegal, he must take the consequence of his own temerity. To subject the press to the restrictive power of a licenser, as was formerly done, both before and since the revolution, is to subject all freedom of sentiment to the prejudices of one man, and make him the arbitrary and infallible judge of all controverted points in learning, religion, and government.

. . . . .

What Blackstone thus recognized as the law of England concerning freedom of the press came to be, 133 years later, an established constitutional right in Pennsylvania as to both speech and press; Article IX, Section 7, of the Constitution of 1790 so ordained; and, as already pointed out, the provision still endures as Article I, Section 7, of our present Constitution." (Footnote omitted.)
405 Pa. at 88, 173 A.2d at 62.

A majority of the Superior Court concluded that appellant's conduct could be restrained without violating any federal constitutional prohibition. Our conclusion that the equity court violated appellant's state constitutional right to freely speak her opinion—regardless of whether that opinion is based on fact or fantasy—regarding appellees' professional integrity obviates the need for any discussion here of federal law.

 Our resolution should also render unnecessary any discussion of the Superior Court's proposed exception to the so-called traditional view that equity lacks the power to enjoin the publication of defamatory matter. *See generally* Annot. 47 A.L.R.2d 715 (1956), and cases cited therein. We do believe, however, that the Superior Court's observation that "in the present case an action for damages would be a pointless gesture since [appellant] is indigent," 246 Pa.Super.

at 104, 369 A.2d at 832, requires specific comment. We cannot accept the Superior Court's conclusion that the exercise of the constitutional right to freely express one's opinion should be conditioned upon the economic status of the individual asserting that right. Conditioning the right of free speech upon the monetary worth of an individual is inconsistent not only with fundamental principles of justice developed by the Supreme Court of the United States and guaranteed by the Federal Constitution, but also violates our own Constitution's express admonitions that "[a]ll men are born equally free and independent, and have certain inherent and indefeasible rights . . ." (Art. I, Section 1), and that "[n]either the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." (Art. I, Section 26.)

In Pennsylvania the insolvency of a defendant does not create a situation where there is no adequate remedy at law. In deciding whether a remedy is adequate, it is the remedy itself, and not its possible lack of success that is the determining factor. *Bersch v. Rust, Trustee,* 249 Pa. 512, 95 A. 108 (1915). "The fact, if it be so, that this remedy may not be successful in realizing the fruits of a recovery at law, on account of the insolvency of the defendants, is not of itself or ground of equitable inference." *Heilman v. Union Coal Co.,* 37 Pa. 100, 104 (1860).

The order of the Superior Court, modifying and affirming the decree of the trial court, and the decree of the trial court are reversed.

POMEROY, J., filed a concurring opinion.

ROBERTS, J., filed a concurring opinion in which O'BRIEN, J., joined.

EAGEN, C. J., filed a dissenting opinion.

NIX and LARSEN, JJ., dissent.

ROBERTS, Justice, concurring.

I agree with the opinion of Mr. Justice Manderino that appellant's indigency does not justify the Superior Court's radical departure from the long-standing general rule that equity will not enjoin a defamation. In *Heilman v. Union Canal Company*, 37 Pa. 100, 104 (1860), this Court said:

"The fact, if it be so, that this remedy may not be successful in realizing the fruits of a recovery at law, on account of the insolvency of the defendants, is not of itself a ground of equitable interference. The remedy is what is to be looked at. If it exist [sic], and is ordinarily adequate, its possible want of success is not a consideration."

See also, *Derry Township School District v. Barnett*, 332 Pa. 174, 177, 2 A.2d 758, 760 (1938); *Bersch v. Rust*, 249 Pa. 512, 514, 95 A. 108 (1915). Money damages are adequate to recompense the plaintiffs for any losses they have suffered as a consequence of the defendant's defamatory publication. Thus, it was improper to grant equitable relief based on appellant's presumed inability to pay a money judgment.

As a consequence of holding that the defendant's indigency creates equitable jurisdiction, the Superior Court conditions appellant's right to trial by jury on her economic status. One of the underlying justifications for equity's traditional refusal to enjoin defamatory speech is that in equity all questions of fact are resolved by the trial court, rather than the jury. Thus, it deprives appellant of her right to a jury trial on the issue of the truth or falsity of her speech. *Baltimore Life Ins. Co. v. Gleisner*, 202 Pa. 386, 388, 51 A. 1024 (1902). See also *Kidd v. Horry*, 28 F. 773 (C.C.Pa.1886). The right to trial by jury is more than mere form. Indeed the right to a jury trial is guaranteed by this Commonwealth's Constitution. Pa.Const. Art. I, § 6.

Furthermore, despite this Court's traditional practice of avoiding constitutional questions where a non-constitutional ground is dispositive, *Mt. Lebanon v. County Board of Elections*, 470 Pa. 317, 322, 368 A.2d 648, 650 (1977), it is appropriate in this case to reaffirm expressly the settled law governing the first amendment issue before us. The injunc-

tion in this case is a classic example of a prior restraint on speech. Protection of the citizenry from prior restraints is one of the leading principles on which the first amendment is based. *Lovell v. Griffin*, 303 U.S. 444, 451–52, 58 S.Ct. 666, 82 L.Ed. 949 (1938). See *Near v. Minnesota*, 283 U.S. 697, 713, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). Thus, there is a heavy presumption against the constitutional validity of any prior restraint on speech. *New York Times Company v. United States*, 403 U.S. 713, 714, 91 S.Ct. 2140, 2141, 29 L.Ed.2d 822 (1971); *Organization for a Better Austin v. Keefe*, 402 U.S. 415, 419, 91 S.Ct. 1575, 1578, 29 L.Ed.2d 1 (1971); *Carroll v. President and Commissioners of Princess Anne*, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968).

In *Organization for a Better Austin*, supra, the Supreme Court held unconstitutional an injunction restraining members of a citizen group from leafletting and picketing outside a real estate broker's home. In doing so the Court stated:

"Respondent thus carries a heavy burden of showing justification for the imposition of such a restraint. He has not met that burden. No prior decisions support the claim that the interest of an individual in being free from public criticism of his business practices in pamphlets or leaflets warrants use of the injunctive power of a court."

Id., 402 U.S. at 419, 91 S.Ct. at 1578. That rationale is equally applicable here. Appellees' interest in protecting their reputations is insufficient to justify enjoining appellant's speech, particularly where there is a legal remedy available. Thus, under the first amendment and the Supreme Court cases involving prior restraints, no basis exists for permitting the injunction in this case to stand.

Moreover, sound jurisprudential considerations dictate that we interpret Article I, § 7 of the Pennsylvania Constitution, at a minimum, to meet the established standard under the first amendment. See *Reitman v. Mulkey*, 387 U.S. 369, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967) (California constitutional provision struck down as inconsistent with the

fourteenth amendment to the federal Constitution). Our constitutional provision, too, is based upon an abhorrence of prior restraints.

For the above reasons, I concur in the result reached by the opinion of Mr. Justice Manderino.

O'BRIEN, J., joins in this concurring opinion.

POMEROY, Justice, concurring.

I concur in the decision of the Court to reverse the order of the Superior Court and the decree of the court of common pleas which the Superior Court affirmed.

My own views leading to this result are fully and clearly set forth in the careful opinion of Judge (now President Judge) Jacobs, joined by Judges Hoffman and Spaeth, dissenting in the Superior Court. I take the liberty of incorporating that opinion herein by reference. See *Mazzocone v. Willing*, 246 Pa.Super. 98, 109, 369 A.2d 829, 834 (1977) (dissenting opinion of Jacobs, J.).

EAGEN, Chief Justice, dissenting.

I dissent for the reasons articulated in my dissenting opinion in *Wm. Goldman Theatres v. Dana*, 405 Pa. 83, 173 A.2d 59, *cert. denied*, 368 U.S. 897, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961).