## Lauria v. Kaye

*Randy S. Rosen,* for plaintiff.
*David A. Scholl,* for defendant.

CAVANAUGH, *J.,* May 14, 1979—The matter presently before this court is a preliminary injunction arising out of an action in equity to determine the ownership of a bank account between plaintiff, Brian Lauria, and defendant, Myra Kaye. Said bank account is titled "Myra Kaye in trust for Brian Lauria (fiance)," and is currently deposited with defendant Beneficial Savings Bank. Plaintiff obtained an ex parte preliminary injunction signed by Judge Doty on September 25, 1978, enjoining defendant Beneficial Savings Bank from releasing any funds in the disputed account. A bond was set in the amount of $5,000. A return date was fixed before Judge Doty on September 29, 1978, and after a hearing the matter was continued to October 5, 1978. The case was then transferred to the calendar room for assignment when certain scheduling problems arose. We took this assignment and heard evidence on October 5 and 6 on the issue of whether the ex parte injunction of September 25, 1978 should be continued. On October 11, 1978, we issued an order continuing the order of September 25, 1978 in full force and effect until further order of the Court of Common Pleas of Philadelphia County. Defendant Myra Kaye then filed a notice of appeal to the Superior Court and a motion for reconsideration of our order of October 11, 1978.[1] On December

---

1. Defendant's motion for reconsideration was denied on March 6, 1979.

1, 1978, we ordered defendant Myra Kaye to file of record and with this court a concise statement of the matters complained of on appeal in compliance with Pa.R.A.P. 1925(b). Defendant Kaye complied with that order on December 15, 1978 and this opinion follows after research into one very narrow issue.

The factual history of this case revolves around the personal relationship between the individual defendants Brian Lauria and Myra Kaye. It is unnecessary to detail facts of this case to the extent that they were developed at the hearings before this court. It will be sufficient to state that both individual parties did levy charges of perilous and bizarre conduct against each other and that the transcript of this action would be appropriate material for an afternoon television soap opera.

Prior to the year 1977, plaintiff Brian Lauria and defendant Myra Kaye had been married to each other. The exact date of the marriage was not established at the hearings. It appears that the parties separated prior to 1977 and a divorce proceeding was instituted. The parties began to see each other again in February, 1977. The divorce decree was entered in July, 1977 and in September, 1977 the parties began to live together again. Sometime after September, 1977, the parties attempted to buy a home together in New Jersey. This sale was not concluded because plaintiff's credit record was bad and the mortgage application was rejected. In April, 1978, the bank account in dispute was opened with a $4,600 deposit. There were a number of subsequent deposits and withdrawals with the final sum amounting to $5,000 on July 10, 1978. Defendant Beneficial Savings Bank has stipulated that it would pay to the trustee (Myra Kaye) the sum

in the account upon presentation of the bankbook should the injunction be lifted. These essential facts are undisputed between the parties. Substantial disagreement exists as to whose money was used to open the account, the purpose for opening the account and the explanation for the deposits and withdrawals.

Plaintiff alleges that the money used to open the account in question was his. Mr. Lauria's testimony was that he gave Ms. Kaye $4,600 in cash to open the account in her name to improve her asset picture. This was supposedly done to increase Ms. Kaye's chances of obtaining a mortgage for the home that Ms. Kaye and Mr. Lauria wanted to buy. Plaintiff then explains the number of deposits and withdrawals as essentially a series of business transactions that he conducted.

Ms. Kaye's history of the bank account is completely different from plaintiff's. According to Ms. Kaye, she opened the bank account with money that she had saved over a period of time. She alleges that she opened the account in trust for Brian Lauria as a surprise for him since they were thinking of getting married again. Ms. Kaye asserts that she made it clear to Mr. Lauria that the money was hers and could only be touched by him in the event of her death. It is sufficient to state that Ms. Kaye's explanations of the subsequent deposits and withdrawals is different from Mr. Lauria's though the exact conflicts are not relevant here.

Defendant Kaye's statement of matters complained of on appeal lists the following alleged errors:

1. The court failed to apply the law establishing the prerequisites for a preliminary injunction in fashioning its order, i.e., that the party seeking the

injunction must show that he will suffer irreparable harm unless it is granted; that he will suffer greater harm from its denial than the opposing party by granting it; that the order shall maintain the status quo; and that plaintiff's ultimate right to relief is clear and the wrong of defendant manifest. Rather, the court appeared to conclude that, if plaintiff established merely that a justiciable controversy existed between the parties, the granting of a preliminary injunction was proper.

2. The court failed to recognize that, for two separate reasons, any equitable relief granted to plaintiff was inappropriate:

a. Plaintiff has an adequate remedy at law—an action in assumpsit—to obtain the ultimate relief which he seeks: damages for defendant's alleged conversion of his property.

b. Plaintiff is barred from equitable relief because of his unclean hands, arising from, inter alia, the foregoing facts exhibited in the record:

(1) His confiscation of defendant's 1976 Malibu automobile without consideration;

(2) His destruction and ultimate conversion of the wreckage and insurance proceeds from defendant's 1978 Monte Carlo automobile; and

(3) His destruction of defendant's clothing, jewelry, and other property on several separate occasions without providing compensation to defendant therefor, despite promises of same.

3. The court failed to weigh the uncertainty and improbability of plaintiff's explanations as to how the funds in question could be his against defendant's plausible and certain explanation as to why the funds in question, having been deposited into an account from which only she could draw, were hers. Assuming arguendo that the parties' versions

were equally believable, the court failed to consider the strong burden upon plaintiff to clearly meet his burden of showing all of the necessary prerequisites to entitle him to the extraordinary relief of a court interference with defendant's contract with her bank. We will deal with defendant's complaints in reverse order.

Defendant Kaye has argued to this court that we failed to recognize that plaintiff's testimony was uncertain and improbable and that defendant's testimony was certain and plausible. Essentially, this contention is that we neglected to find plaintiff to be a liar and scoundrel. After a review of the record we find that plaintiff presented more than sufficient evidence to establish by a preponderance of the evidence a case of his right to the bank account in question and thus his right to a preliminary injunction. "A preliminary injunction is generally simply preventive, maintaining the status quo until the rights of the parties are determined after a full examination and hearing." McMullan v. Wohlgemuth, 444 Pa. 563, 573, 281 A. 2d 836 (1971).

With respect to the testimony of plaintiff, we found his testimony, which has been outlined above, to be credible with regard to his motion for the continuance of the preliminary injunction. We do not believe that this finding in any way affects the outcome at the final hearing on the merits and do not intend this finding to have any such effect. The issue of credibility of plaintiff then goes only to his request for a preliminary injunction and we find that he was credible in that respect. Defendant's alternative argument with respect to credibility goes to the issue of the proper legal standard to be applied in a request for a preliminary injunction and will be discussed below.

Defendant also argues that plaintiff is barred from equitable relief because plaintiff has an adequate remedy at law or because of unclean hands. The relevant testimony at the hearing as to the question of an adequate remedy at law was that Beneficial Savings Bank would pay the balance of the account in question to defendant Kaye upon presentation of the bankbook should the injunction be dissolved. Ms. Kaye will return to Florida as soon as possible. Ms. Kaye has also attempted to withdraw the entire balance of the account plus interest by mail from Florida and Ms. Kaye has admitted that she will use that money to pay her bills. Defendant Kaye is also indigent at the present time and is not employed. Based upon these facts, we believe that an action in assumpsit is not an adequate remedy at law where an indigent party admits that she will remove funds at issue from the jurisdiction and spend them. The party in question is not only judgment proof here but is also removing herself from the jurisdiction. We believe that the case at hand is distinguishable from the case of Willing v. Mazzocone, 482 Pa. 377, 393 A. 2d 1155 (1978). In Willing, the Pennsylvania Supreme Court was faced with the issue of the constitutionality of an injunction restraining an ongoing defamation. The court held in that case, based upon the Pennsylvania Constitution, that the indigency of a party does not justify an injunction which is the equivalent of a prior restraint on an individual's right to freely communicate thoughts and opinions. The language cited by defendant that, "the insolvency of a defendant does not create a situation where there is no adequate remedy at law," Willing, 482 Pa. at 383, 393 A. 2d at 1158, must be read in the factual context of the case. A careful reading of

the Supreme Court's opinion indicates that the Supreme Court believed that the indigency of the appellant therein was used as a justification for the imposition of an injunction. In the case at hand, indigency is only one of a number of factors that led this court to determine that there was no adequate remedy at law. In light of defendant's admission that she was going to take the funds from the bank account out of the jurisdiction and spend them, we believe such to be sufficient to find the inadequacy of plaintiff's assumpsit action.

As to the defense of unclean hands, we note that unclean hands is an affirmative defense and should be raised as new matter under Pa.R.C.P. 1030: Luitweiler v. Northchester Corp., 456 Pa. 530, 319 A. 2d 899 (1974).

"The clean hands doctrine, however, does not require that a plaintiff be denied equitable relief merely because his conduct has been shown not to have been blameless. The bar of unclean hands is applicable in Pennsylvania only where the wrongdoing of the plaintiff directly affects the equitable relationship subsisting between the parties and is directly connected with the matter in controversy. Pennsylvania Society for the Prevention of Cruelty to Animals v. Bravo Enterprises, Inc., 428 Pa. 350, 237 A. 2d 342 (1968). Furthermore, the application of the doctrine to deny relief is within the discretion of the chancellor, and in exercising his discretion the chancellor is free not to apply the doctrine if a consideration of the entire record convinces him that an inequitable result will be reached by applying it." Stauffer v. Stauffer, 465 Pa. 558, 575, 351 A. 2d 236 (1976).

The evidence presented by defendant Kaye was that plaintiff had previously converted property of defendant, had beaten her and committed other actions that were criminal in nature. We do not believe that these actions directly relate to the issue of the continuance of the preliminary injunction at hand. None of the actions described by defendant Kaye dealt with any activities concerning the bank account in question. This finding is without prejudice to these issues being raised at a final hearing when the ultimate question will be dealt with in full detail.

The final issue raised by defendant is the proper test to be applied in a hearing for a preliminary injunction. The test which defendant asserts to be proper is that the party seeking the injunction must show that he will suffer irreparable harm unless it is granted; that he will suffer greater harm from its denial than the opposing party by granting it; that the order shall maintain the status quo, and that plaintiff's ultimate right to relief is clear and the wrong of defendant manifest. We take issue only with the last portion of defendant's test. The testimony discussed above clearly shows the irreparable harm that plaintiff faced if the injunction was not granted. Plaintiff has posted a $5,000 bond to protect defendant Kaye, thus the greater harm would.be to plaintiff if the injunction were not continued.[2] Additionally, the status quo is maintained by the injunction with no greater rights created on behalf of any party hereto.

---

2. There was no evidence presented by defendant Kaye that would indicate any harm that would be greater than the harm that plaintiff would experience.

Our problem with the above test is defendant's contention that a plaintiff must prove that his right to ultimate relief is clear and the wrong of the defendant manifest before a plaintiff can obtain a preliminary injunction. The nature of a preliminary injunction on the other hand is simply preventive, to maintain the status quo until a final hearing on the merits is held: McMullan, supra. To require a plaintiff to prove at the preliminary injunction stage that his ultimate right to relief is clear would be placing an impossible burden upon him. A preliminary injunction is usually an emergency matter and the facts of the dispute are normally not available or even fully known at that time. It is the purpose of the final hearing on the merits to determine the rights of the parties and hence the propriety of continuing, modifying or dissolving the preliminary injunction.[3]

We note that defendant Kaye has cited to us and our research revealed a number of Pennsylvania appellate court cases which contain the language that plaintiff must prove that his right to relief is clear before he may obtain a preliminary injunction. This language clearly conflicts with the concept of a preliminary injunction and in actuality makes it impossible to obtain a preliminary injunction. We also note that in McMullan v. Wohlgemuth at 573, the Pennsylvania Supreme Court spoke of the clear right requirement as being an exception

---

3. We note that a defendant is not necessarily subject to an inordinate delay in obtaining a hearing on the merits by reason of the case backlog. Under Philadelphia Court Rule 200(F) a party may obtain a special listing on the trial calendar, thereby obtaining an advanced trial date by petitioning the President Judge for such an advancement.

necessary where a preliminary or interlocutory injunction was mandatory in nature. We are thus somewhat confused by the case law in Pennsylvania and have researched this narrow issue to determine the history of the clear right language and its reasoning to reconcile that language with the purpose of a preliminary injunction.

It is not disputed that many modern cases state that in order to obtain a preliminary injunction, plaintiff must show that his right to relief is clear: Roberts v. Board of Directors, School Dist. of Scranton, 462 Pa. 464, 341 A. 2d 475 (1975); Zebra v. Pittsburgh School District, 449 Pa. 432, 296 A. 2d 748 (1972); Keystone Guild, Inc. v. Pappas, 399 Pa. 46, 159 A. 2d 681 (1960); McDonald v. Noga, 393 Pa. 309, 141 A. 2d 842 (1958). Initially we note that many cases fail to distinguish between the use of the quantum test for the ultimate right to the relief or simply for the right to a preliminary injunction. Defendant Kaye asserts that the former is true. While we are not convinced that this is so in all cases, there does appear to be some support for this position: Sameric Corp. v. Goss, 448 Pa. 497, 295 A. 2d 277 (1972); see also Nelson v. Miller, 373 F. 2d 474 (3d Cir. 1967), cert. den. 387 U.S. 924, 87 S.Ct. 2042 (1967).[4] It appears to this court that the clear right language has been adopted, almost verbatim from very old cases without any explanation as to its meaning. In Biddle v. Ash, 2 Ashmead 211 (1838), the court held that plaintiff's right must be clear because the enjoined party would have no remedy from such a court order. That situation is not the case at hand where a bond has been posted.

---

4. A collection of cases on this general point is found at 19A Vale (Pa.) Injunction §137(4).

The court in Biddle also cited a New York case, Storm v. Mann, 4 Johnson's Chancery Reports 21 (1819), to support its position. That two paragraph opinion is quoted below.

"The title appears to be disputed; for the defendant has been in possession for a long time, and has joined issue with the plaintiff at law, on the question of title, and the action is still pending undetermined. Under these circumstances, I do not feel myself authorized to grant the injunction.

In Field v. Jackson, (Dickens, 599), the Lord Chancellor held it to be a general rule, that when the right was doubtful, the court would not grant an injunction. So, in a case before Lord Eldon, (Pillsworth v. Hopton, 6 Ves. 51.) an injunction to restrain waste was not granted against a defendant in possession, claiming by an adverse title. If the plaintiff, in his bill, states such a claim on the part of the defendant, he states himself out of court, as to the injunction. In the present case, the bill does state to that effect, when it states that the defendant has been a long time in possession, and has joined issue with the plaintiff in ejectment. I must know the result of that issue at law before I can interfere."

The distinction between Storm and the case at hand is obvious. Storm was an action in ejectment. The granting of a preliminary injunction there would have given the moving party everything that could have been obtained at a final hearing. Nothing in the opinion in Storm aids us in the situation where the injunction seeks only to maintain the status quo. Similarly, in Brown's Appeal, 62 Pa. 17 (1869), the moving party was seeking to specifically enforce a contract by way of a preliminary injunction.

Another distinction which has become blurred in older cases is the difference between a preliminary and a permanent injunction. In Com. v. Rush, 14 Pa. 186 (1850), the court talks about a clear right requirement for the preliminary injunction at issue there, but the actual fact was that the injunction at issue there was permanent in nature. See also Commissioners of Moyamensing v. Long, 1 Parsons' Equity Cases 143 (1845). The burden of proof for a permanent injunction is greater than that of a preliminary injunction and while a clear right test may be proper for the former, it is not for the latter.

We have been unable to discover a case in Pennsylvania that explains the justification for requiring a party to prove a clear right to ultimate relief at the hearing for preliminary injunction. An examination of the older treatises has not been very helpful either. In both 6 Brewster's Practice, Equity 412 (1895), and 4 Johnson, Equity Practice in Pennsylvania 651 (1913), it is stated that a plaintiff must show a clear right to establish a case for a preliminary injunction. Brewster's Practice does not cite any law to support its proposition and the case law cited in Johnson falls within the exceptions listed above. A lack of consensus is readily apparent from the following quotations:

"It is not necessary that the court be satisfied that the plaintiff will certainly prevail on the final hearing; 'a probable right, and a probable danger that such a right will be defeated, without the special interposition of the court,' is all that need be shown." Pomeroy's Equity Jurisprudence, §264 (1907).

"A preliminary injunction is emphatically the strong arm of the court, and is never awarded except in clear cases of right, and where no doubt

exists as to the claim of the plaintiff to the remedy he invokes. A doubt however, about the legal rights of the parties, would be no reason for deciding either one way or the other on a motion for an injunction."[5] Brightly's Equity Jurisdiction, §303 (1955).

"The principles which govern courts in granting preliminary injunctions in this class of actions are the same upon which courts of equity constantly act in granting such injunctions in other cases of equitable cognizance. The order for such an injunction does not finally determine the rights of the parties to the action, and its only purpose and effect are to preserve the existing state of things until the case has been fully heard by the court, and the entry of a final decree therein. And it is equally well settled that the granting of a provisional injunction rests in the sound discretion of the trial court, and that it is not necessary that the court should, before granting it, be satisfied from the evidence before it that the plaintiff will certainly prevail upon the final hearing of the cause." Southern Pac. Co. v. Earl, 82 Fed. 690, 691, 27 C.C.A. 185 (1897).

The confusion noted above is carried into modern statements on the law. In 42 Am. Jur. 2d Injunctions §15 (1969), we found a test which was a compromise of the two above positions: "A preliminary injunction is an extraordinary remedy which will not be granted unless there is a clear showing of probable success of the plaintiff and of possible ir-

---

5. Initially we found this passage confusing. It would seem that the right of the plaintiff referred to therein must mean plaintiff's right to a preliminary injunction and not the ultimate question of fact or law.

reparable injury to the plaintiff." In 43 C.J.S. Injunctions §17, the test is stated at 778-779 as:

"Thus, it has been stated that the appropriateness of granting or denying a preliminary injunction depends on the consideration and balancing of several factors, including likelihood of success on the merits, lack of an adequate remedy at law, prospect of imminent and irreparable harm if an injunction is not issued, comparison of relative hardships imposed on the parties, and whether the relief requested will adversely affect other parties or the public interest. No one fact is determinative and the court should be flexible in fashioning suitable temporary relief." (Footnotes omitted.)

It is thus obvious that there are as many tests and variations thereof as there are authorities. It seems that one source of the problems is the failure of some authorities and cases to draw a distinction between the various types of relief that a moving party seeks in a preliminary injunction.

We believe that a court must distinguish between a preliminary injunction that seeks to maintain the status quo and one that would change the position between the parties or attain at the preliminary stage all of the relief that could be obtained at the final hearing. The authorities cited above are not instructive as to why a particular requirement is necessary or not in a given instance. Modern Pennsylvania cases do state that a clear right must be shown at the preliminary injunction level without any discussion as to the rationale behind this test except to cite prior case law. An examination of the older cases reveals that those cases involved injunctions that were mandatory or permanent in nature or a preliminary injunction which effected a substantial change in the parties' positions.

We do not believe that a party must prove a clear right to ultimate relief at a hearing for a preliminary injunction. Such a requirement would place an insurmountable burden upon a moving party without any compelling reason. If a party presents a justiciable issue to the court that is not frivolous, proves an immediate injury with irreparable harm and no adequate remedy at law, then we believe that the party has sustained his burden for a preliminary injunction. To require a party to prove a clear right to his ultimate claim fails to adequately consider the injury to the moving party. The rights of the enjoined party are scrutinized and weighed when the court considers the immediate and irreparable nature of the alleged injury. Additional protection for the enjoined party is afforded by the posting of a bond by the moving party.

We can understand placing an additional requirement upon a party who seeks to alter the status quo or to obtain in effect final relief at the preliminary level. In those situations it does make sense to have a party prove a clear right before he receives such extraordinary rights. But that is not the case at hand and we do not believe that such a test is justified here.

At the hearing on the instant case we had stated that we believed that plaintiff had proved a "justiciable issue" and had thus met his burden. Defendant Kaye has complained that this was the sole test applied by this court. We believe that a plaintiff must show a justiciable issue between the parties as to the target of a proposed injunction as a threshold question. A party must still prove an immediate and irreparable harm and no adequate remedy at law. While our statement of the test for a preliminary injunction is a departure from statements in modern cases, we do not believe it to be a

substantive change. The purpose of a preliminary injunction is to maintain the status quo in an emergency situation and the requirement of showing a "clear right" should apply as logic demands and not automatically in situations where it would be inappropriate.

Based upon all of the facts presented at the hearings, we believe that plaintiff has met his burden of proof in this case.