573 A.2d 550

FRANKLIN CHALFONT ASSOCIATES, Appellee,

v.

Lawrence A. KALIKOW and Beverly Kalikow and Ronald W. Prevatt and Sharon Prevatt and Charles J. Rocconi and Rosemary B. Rocconi and Raymond De Masi and Nancy De Masi and Thomas E. Kolterman and Susan Donahue, Appellants.

Appeal of Lawrence A. KALIKOW, Beverly Kalikow, Ronald W. Prevatt and Sharon Prevatt.

American Civil Liberties Union of Pennsylvania Amicus Curiae.

Superior Court of Pennsylvania.

Argued Oct. 13, 1989.

Filed April 10, 1990.

Lawrence A. Kalikow, Doylestown, Sharon M. Friel, Philadelphia, for appellants.

Louis J. Sinatra, Blue Bell, for Franklin Chalfont Associates, appellee.

Before CAVANAUGH, OLSZEWSKI and KELLY, JJ.

CAVANAUGH, Judge:

This is an interlocutory appeal as of right, pursuant to Pa.R.A.P. 311(a)(4), from an order entered March 1, 1989, as amended March 6, 1989, by the Court of Common Pleas of Bucks County, per Clark, J. Appellants Lawrence and Beverly Kalikow and Ronald and Sharon Prevatt are owners of homes which they purchased from Franklin Chalfont Associates, appellee herein, at Franklin's Oxbow Ridge development in New Britain Township, Bucks County. The order of March 1, 1989 enjoined and restrained appellants and six other defendants no longer party to this action from picketing Oxbow Ridge or any of the businesses or projects of appellee Franklin Chalfont Associates; from displaying signs tending to impute Franklin's lack of skill, competence, or integrity or tending to interfere with its conduct of business; from publishing statements tending to impute or accomplish the same; from interfering with the lawful conduct of Franklin's business; and ordered the posting of bond.

The order of March 6 continued that portion of the March 1 injunction relating to picketing and to the display of outdoor signs; signs exhibited in interior windows could remain displayed as they appeared in photographs which are part of the record. The court also modified the injunction with respect to statements made by appellants; by March 6 order, they were permitted to express their dissatisfaction with Franklin verbally to other persons with whom they spoke. However, publication of written statements imputing to Franklin lack of skill, competence, or integrity or interfering with Franklin's business was still, and remains, enjoined. Because we believe the injunction as modified violates the constitutional rights of the defendants under both state and federal law, we vacate the orders.[1]

1. Franklin has suggested in its counterstatement of the facts that the appeal is moot because it has almost concluded sales at Oxbow Ridge. However, the appeal is not moot because the injunction specifically requested and received by Franklin was not limited in time or scope to the course of development at Oxbow Ridge but rather enjoined picketing at any of the businesses or projects of Franklin or its

These injunctions were entered during the course of hearings held February 28, March 1, March 3, and March 6 of 1989. Following entry of the March 1 injunction, appellants immediately made a demand for a final hearing within three days, to which they were entitled under Pa.R.C.P. 1531(f)(1).[2] That demand was denied by the trial court but, upon request by counsel for Franklin, the trial court scheduled a final hearing for the afternoon of March 3, 1989.

Counsel for appellee Franklin, with appellants' agreement, moved to continue indefinitely the final hearing and allow the preliminary injunction to dissolve. *See*, Pa.R.C.P. 1531. The trial court denied the request and instead asked appellants to agree to permit the injunction to remain in force over the weekend. Appellants refused to agree to an extension of what they claimed was an unconstitutional

affiliates "not limited to the Oxbow Ridge development" and enjoined publication of any written statements, including the display of signs, tending to impute Franklin's lack of skill, etc. and/or tending "to materially interfere" with the conduct of business by Franklin or its affiliates "including but not limited to its business at Oxbow Ridge". By the broad terms appellee requested, the injunction continues to prevent appellants from engaging in expressive conduct concerning, for instance, their own experience at Oxbow Ridge in connection with other projects of Franklin's. Thus a live controversy exists in that appellants are presently prevented by court order from exercising their constitutional rights in a variety of circumstances in which they might otherwise choose to exercise them.

Only dissolution of the injunction would render the matter moot since the injunction still serves as an actual as well as a theoretical restraint on appellants' expressive conduct at other Franklin projects besides Oxbow Ridge. However, this court has the power only to affirm or to vacate the order of the trial court, not to dissolve the injunction in response to a suggestion by appellee that it would prefer a mootness disposition since the injunction has already served appellee's primary purpose.

**2.** Pa.R.C.P. 1531(f)(1) provides:

When a preliminary or special injunction involving freedom of expression is issued, either without notice or after notice and hearing, the court shall hold a final hearing within three (3) days after demand by the defendant. A final decree shall be filed in the office of the prothonotary within twenty-four (24) hours after the close of the hearing. If the final hearing is not held within the three (3) day period, of if the final decree is not filed within twenty-four (24) hours after the close of the hearing, the injunction shall be deemed dissolved.

restraint. Consequently, the trial court directed Franklin to put on testimony. The final hearing commenced at approximately 5:00 p.m. on Friday, March 3. At 7:00 p.m., the court continued the hearing and the injunction until the following week.

On March 6, appellants filed an appeal from the March 1 order. The trial court denied a stay pending appeal, but modified the order as described above. The injunction as modified became final on March 6.[3] Defendants appealed the March 6 order on March 7, 1989 and were granted a temporary seven-day stay. The appeals were consolidated on April 28, 1989.

At the time that the March 6 injunction was entered, Franklin had put on some of its witnesses and introduced several exhibits into evidence, but had not completed its case. Nor had appellants yet had an opportunity to cross-examine all of those witnesses,[4] or to put on their own case. Even without the benefit of appellants' case, we think that

3. During the course of the hearings, an issue arose as to whether the preliminary injunction entered on March 1 and continued on March 3 was appealable. Likewise, the trial court opined that appeal from its order of March 6 would be premature. We note that the plain language of Pa.R.A.P. 311 states that an order granting, continuing, modifying, refusing or dissolving injunctions or refusing to dissolve or modify injunctions is interlocutorily appealable. Since the court entered a final injunction on March 6 in order to prevent appellants from asserting that the March 1 preliminary injunction should have dissolved pursuant to Pa.R.C.P. 1531(f), we need not decide whether the trial court's failure to complete a final hearing within the three-day limit prescribed by Rule 1531(f) operated to dissolve the March 1 preliminary injunction.

4. During the Rule 1531(f) final hearing, the trial court, over defense counsel's objection, incorporated affidavits and an offer of proof which had been admitted during the 1531(a) preliminary injunction hearing. Although Rule 1531(a) permits the court to consider affidavits and any other proof which the court may require, there remains an issue as to whether it is proper for a court to consider such evidence, which is not subject to cross-examination, in connection with a final hearing under 1531(f). *See, Soja v. Factoryville Sportsmen's Club*, 361 Pa.Super. 473, 522 A.2d 1129 (1987) (it is inappropriate to integrate proceedings involving a request for preliminary injunction and final injunction as each is controlled by separate and distinct standard). Given our decision to vacate the trial court's orders on other grounds, we need not address this issue.

neither the pleadings nor the record supports the judge's decision to grant Franklin the injunction.[5]

The following facts were adduced at the afore-mentioned hearings. In April and September of 1987, appellants purchased new homes from Franklin at its Oxbow Ridge development located in Bucks County. Oxbow Ridge was Franklin's first single-family residential development, though it had previously been involved in many other construction projects.

Following settlements on their homes during 1987 and 1988, appellants and numerous other homeowners experienced various problems with their new homes, including exterior grading of their properties and completion of "punch list" items. In this case, "punch list" items refer to unfinished or improperly executed features in the new homes which presented cosmetic, aesthetic, or minor, rather than serious, structural concerns; examples range from drywalling to window leaks and cabinet trim.

In addition, appellants Prevatt experienced problems of a more serious nature after they settled in May, 1988. Franklin's witnesses testified that a water service line broke on the property due to settlement of the ground in the Prevatt yard. Water penetrated the foundation wall through a water pipe and a sewer sleeve and flooded the basement. (Transcript of March 1, at 140.) Franklin's witness could not categorically state that the water problem was corrected as of the March 1, 1989 hearing. Likewise, appellants Kalikow have had ongoing difficulty getting the grading and seeding of their lawn accomplished.

Sometime after January 1988, appellants and other Oxbow Ridge homeowners began displaying signs on their front porches, in their windows, or on their front lawns expressing dissatisfaction with their homes. Signs appear-

---

**5.** Additionally, some of the judge's findings of fact in the "Adjudication" are manifestly unsupported by record references. *E.g.,* Findings of Fact numbers 8, 9, 13, 23, 26, 27. Contrary to the court's opinion, there is absolutely no evidence in the record, nor is there any allegation in the pleadings, that appellants at any time refused to allow Franklin to perform work on their homes.

ing on front lawns were similar in size and appearance to "for sale" signs, with additional words to the effect that the owner was dissatisfied with the home in question.[6] One of these signs was posted by the owner of the property across the street from the model home. At one time, appellants Prevatt had also displayed a somewhat larger sign asking Franklin when they were going to fix the water problem in their home.

In February or March of 1988, a number of Oxbow Ridge homeowners formed a homeowners' association for the purpose of expediting and remedying problems with the completion of punch list items. By letter dated March 4, 1989, members of the homeowners association expressed their displeasure with Franklin's post-settlement efforts in completing their homes.[7]

Shortly thereafter, a meeting was held between homeowners' representatives and Franklin. Franklin's president, John Gerbert, said he would not deal with the association but would attempt to resolve problems with individuals. Franklin did assure homeowners that exterior grading of all occupied homes would be completed by March 31, 1988,

---

**6.** In support of its complaint for relief, Franklin avers that the modified "for sale" signs violate the New Britain Township Zoning Ordinance, which limits the posting of signs in residential neighborhoods. "For sale" signs within particular dimensions are one type of sign which the ordinance permits. To the extent that the ordinance seeks to restrict signage on the basis of its expressive content (rather than, for instance, on the basis of its physical dimensions), it would appear to be unconstitutional. *Linmark Associates, Inc. v. Township of Willingboro,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977) ("for sale" signs cannot be prohibited on the basis of their content). The Linmark court reached that conclusion even though the signs in that case were being used to advertise and were therefore commercial speech which is deserving of even less protection. Thus, appellants' alleged violations of the New Britain Township ordinance cannot support Franklin's claims.

**7.** On cross-examination, some of *appellee's* witnesses—homeowners who had previously engaged in activities similar to appellants' but who had since received satisfaction from Franklin—testified to the contents of the letter and authenticated their own signatures. The letter itself is marked as an exhibit but is not yet in evidence. Appellants were not afforded an opportunity to move the letter into admission as they had not yet been able to present their case by the time the injunction became final.

weather permitting. At the time of the February 28, 1989 hearing, Franklin's own witness acknowledged that grading of appellants Kalikows' front yard was not yet completed.

By written and oral communication, Franklin advised homeowners that those individuals displaying negative signs would have their problems addressed last or not at all. Evidence in the record shows that Franklin did not consistently carry out this threat.

Appellants picketed the model home which served as Franklin's business office for three or four weekends in July and August of 1988. The only evidence introduced as to the nature of the picketing was a photograph showing four individuals each holding a single sign walking or standing by the edge of the road near Franklin's trailer. The signs expressed dissatisfaction with Franklin and its homes and urged support for legislation protecting homebuyers. There was no allegation in Franklin's pleadings that the picketing was other than peaceful, nor was there any evidence that picketers obstructed pedestrian or vehicular traffic, blocked ingress or egress for the model homes or otherwise physically or verbally intimidated prospective homebuyers or others. Picketing ceased after Franklin representatives met with appellants separately to prepare new punch lists. Franklin continued to urge removal of the signs by the Kalikows and Prevatts.

By January, 1989, additional signs expressing dissatisfaction with the Franklin homes were posted by six other defendant-homeowners. There is no evidence that appellants had urged the other homeowners to post these signs.

Franklin has not disputed that there were delays in construction, grading, and completion of punch list items, but it attributes those delays to site conditions such as hidden springs, to a housing boom which caused difficulties in retaining subcontractors and labor, and to its initial reliance on a topographical survey which proved to be materially inaccurate. Franklin also claims that it has worked diligently to resolve all problems with the homes and it deems those remaining to be minor in nature.

Among the witnesses appearing on Franklin's behalf were homeowners who had previously signed the homeowner association's letter to Franklin or posted signs, but who had since received satisfaction from Franklin regarding their own difficulties and were now concerned with the effect of the remaining signs on their property values and on public perception of the community.

In February, 1989, Franklin sued a total of ten homeowners—appellants and six other defendants no longer party to this action—who maintained posted signs on their properties as of January, 1989. Franklin brought an action in equity, seeking expedited discovery, injunctive relief, counsel fees and costs, and compensatory and punitive damages. The complaint sounds in tortious interference with economic opportunity, defamation, and commercial disparagement.

██ Appellants filed preliminary objections in the nature of a demurrer, which the trial court overruled. Appellants' preliminary objections specifically asserted that the injunctive relief sought be Franklin could not be properly granted in that it would constitute an impermissible prior restraint upon freedom of expression in violation of both the U.S. (First and Fourteenth Amendments) and Pennsylvania (Article I, Section 7) constitutions. Whether the trial court improperly overruled the demurrer is the first issue for our review.

A demurrer accepts as true all well pleaded factual averments and reasonable inferences therefrom and asks the court to examine the complaint to determine whether it sets forth a cause of action which, if proved, would entitle the party to the relief sought. *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979). To the extent that the relief sought by Franklin was injunctive relief from the pure speech and peaceful, non-disruptive, informational picketing activities which Franklin attributed to appellants, the trial court improperly overruled the demurrer. For the same reasons, issuance of the injunction itself was also improper.

In its complaint, Franklin has alleged only that appellant's activities and intentions consisted of the following:

1. Appellants picketed at Oxbow Ridge, without any suggestion that such picketing was in any way violent, disruptive, or physically intimidating.

2. Appellants published statements criticizing Franklin's business practices and impugning its competence, and skill, and integrity, which statements Franklin alleges were defamatory.

3. Appellants approached potential buyers, advised them that the Franklin lacked skill, competence and integrity, and warned them against buying at Oxbow Ridge.

4. Appellants subjected Franklin's employees to threats and verbal abuse and vandalized Franklin's property. These allegations, however, were made in the most general terms and were merely conclusory; no specific incidents were alleged which constituted "threats" or "vandalism". (Nor was any evidence of threats or vandalism presented at the hearings held before the preliminary or final injunctions were issued.)

5. Appellants engaged in these activities with the intent to cause substantial damage to Franklin in its business endeavors and to coerce Franklin into acceding to the "unlawful" demands of appellants. The factual nature of these "unlawful" demands was also neither plead nor proven.

In sum, the facts Franklin has alleged, even if true, do not entitle it to injunctive relief [8] since appellant's activities would be entitled to protection, at least from prior restraints, under the Article I, section 7 of the Pennsylvania Constitution. *Willing v. Mazzocone*, 488 Pa. 377, 393 A.2d

---

**8.** We would note additionally that it is uncertain, in the context of judicial admissions made by Franklin's own employees concerning delays in the completion of various aspects of construction, whether the statements Franklin has attributed to appellants are even actionable under the law of defamation since they tend to express opinions about factual situations the existence of which Franklin does not appear to dispute. However, the issue of Franklin's entitlement to damages at law has not been adjudicated and is not ripe for our review.

1155 (1978); *Goldman Theaters v. Dana,* 405 Pa. 83, 173 A.2d 59 (1961). In addition, appellant's speech is similarly protected under the First and Fourteenth Amendments to the United State Constitution. *NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982); *Cohen v. California,* 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971); *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971); *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940).

Under the federal constitution, any system of prior restraint bears heavy presumption against validity. *New York Times Co. v. United States,* 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971). *See also, Near v. Minnesota,* 283 U.S. 697, 51 S.Ct. 625, 75 L.Ed. 1357 (1931). The U.S. Supreme Court has refused to uphold injunctions against speech intended to harm economically the business of another, even where the state courts have found the activities in question to be "coercive and intimidating, rather than informative." *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 91 S.Ct. 1575, 29 L.Ed.2d 1 (1971). In *Keefe,* the majority observed that "no prior decisions support the. claim that the interest of an individual in being free from public criticism of his business practice in pamphlets or leaflets warrants use of the injunctive power of a court." 402 U.S. at 419, 91 S.Ct. at 1577. Merely because the speech is intended to influence conduct does not remove it from First amendment protection. *Id.*

█ Peaceful picketing carried on in a location generally open to the public is, absent other factors involving the purpose or manner of the picketing, protected by the First Amendment. *Amalgamated Food Employees v. Logan Valley Plaza,* 458 U.S. 886, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982). Speech in the form of a boycott, marches, and picketing, which urges action in which listeners are legally permitted to engage is protected, *NAACP v. Claiborne Hardware,* 458 U.S. at 907, 102 S.Ct. at 3422, as is peaceful picketing of a business even though the purpose "was

concededly to induce customers not to patronize" the business. *Id., citing Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093. Appellants' picketing herein encouraged potential homebuyers to refrain from purchasing homes. The action urged was one in which listeners were legally entitled to engage and it was urged in a fashion which did not involve trespass or disruption; thus it was protected.

The fact that appellants intended to influence the conduct of others by their activity does not make the speech less deserving of protection. *Keefe,* 402 U.S. 415, 91 S.Ct. at 1575. Because there is absolutely no allegation that appellants' speech or picketing was in any way violent, disruptive or physically intimidating or that it urged illegal action, the injunction violated the First Amendment.

The Pennsylvania Constitution, which is even more protective of speech than the federal Constitution, *Commonwealth v. Tate,* 495 Pa. 158, 432 A.2d 1382 (1981), prohibits "prior restraint on Pennsylvanians' right to speak" *Goldman Theaters v. Dana,* 405 Pa. 83, 173 A.2d 59 (1961). Under Pennsylvania law, "peaceful picketing conducted in a lawful manner and for a lawful purpose is lawful, even though it shuts down, bankrupts or puts out of business the company or firm which is picketed." *Tate v. Philadelphia Transport Co.,* 410 Pa. 490, 190 A.2d 316, 320 (1963).

The Pennsylvania Supreme Court's decision in *Willing v. Mazzocone* is directly on point and controls our disposition of this case. In *Willing,* the Pennsylvania Supreme Court vacated an order enjoining speech activities including picketing of a private business similar to the instant case. The Court did so even though the content of the speech itself, unlike that in the present case, was already determined to be defamatory. *Id.*

In *Willing,* a former client of a Philadelphia law firm demonstrated in a pedestrian plaza between office buildings which was also a well-traveled pedestrian pathway between two court buildings. She wore a sandwich-board sign claiming that the law firm stole money from her and sold her out

to an insurance company. She also pushed a shopping cart with an American flag, rang a cow bell, and blew a whistle to attract further attention. After the firm's partners filed a suit in equity to seek an injunction against Willing's activities, hearings were held at which it was found that Willing's statements were patently false. An injunction, as modified by the Superior Court, prevented Willing from further demonstrating or picketing by uttering statements to the effect that the firm stole money from her and sold her out.

The Pennsylvania Supreme Court found that the state constitution prohibited this kind of prior restraint and that the proper remedy was a defamation action. The *Willing* court, citing *Heilman v. Union Canal Co.*, 37 Pa. 100 (1860), found that an action for defamation was an adequate remedy at law despite defendant's indigence since any other conclusion would condition the exercise of the constitutional right to express one's opinion freely on one's economic status.

■■■ The present case closely parallels *Willing* in that Franklin sought the injunction to protect its economic interest in the Oxbow Ridge development even though there existed an adequate remedy at law. Moreover, the type of conduct at issue in the two cases is virtually the same: one or a few individuals demonstrating or picketing in a public place while holding signs critical of a business entity with which they had had unsatisfactory dealings. Appellants' activities are clearly protected from prior restraint under Pennsylvania law.

In addition to objecting to appellants' speech on the basis of its effect, Franklin has complained that the language utilized by appellants in picket and lawn signs was obscene, offensive and embarrassing to the community. Yet the U.S. Supreme Court has repeatedly held that speech does not lose its protected character simply because it may embarrass others or coerce them into action. *Claiborne Hardware*, 458 U.S. 886, 102 S.Ct. 3409; *Keefe*, 402 U.S. 415, 91 S.Ct. 1575. "[S]o long as the means are peaceful,

the communication need not meet standards of acceptability." *Keefe,* 402 U.S. at 419, 91 S.Ct. 1577; *Cohen,* 403 U.S. 15, 91 S.Ct. 1780.

None of the speech which Franklin attributed to appellants is constitutionally obscene or otherwise unprotected. For instance, Franklin's averment and argument that the picket sign "F..... by Franklin" is obscene cannot withstand any scrutiny. As the U.S. Supreme Court held in *Cohen,* speech must in some significant way be erotic or appeal to a prurient interest in order to give rise to the states' broader power to prohibit obscene expression. *See also, Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

■ Without doubt, the injunction which Franklin sought and which the lower court granted was directed at the content rather than the manner of appellants' speech. The injunction only prevents appellants from speech and other expressive conduct which is *critical* of Franklin. It is directed against the ideas expressed because of the detrimental impact which the communication of those ideas has had upon Franklin. It is by no means a time, place, and manner restriction on conduct associated with speech. The present case is thus easily distinguishable both factually and on the basis of the injunction itself from *Rouse Philadelphia, Inc. v. Ad Hoc '78,* 274 Pa.Super. 54, 417 A.2d 1248 (1979).

*Rouse* involved thousands of demonstrators blocking ingress and egress, setting fires, using sound amplification equipment, and threatening physical harm to persons in and around the Gallery, a shopping complex in downtown Philadelphia. In this regard alone, the type of expressive conduct in *Rouse* was far more disruptive than that in the instant case and posed hazards unconnected with the ideas expressed in the speech itself. The *Rouse* demonstrators were protesting the allocation of funds by the City of Philadelphia to develop the Gallery. The action they urged was essentially a "scapegoat" boycott of merchants who

had indirectly benefitted from that allocation but who were in any event powerless to do anything about it.

*Rouse* noted that a person or group of persons is entitled to attempt to convince others to refrain from purchasing certain products whatever their reason but conduct beyond the purer forms of speech may be subject to the control of the state if its manner or purpose gives grounds for its disallowance. The *Rouse* court found that the picketing and demonstrations were illegal because of the violent and disruptive manner in which they were carried out and because the purpose was to harm businesses who were not in any way responsible for the demonstrators' grievances. In fact, the injunction which the Rouse court upheld went more to the time, place, and manner of picketing and demonstration rather than to the content of the speech itself.

The instant case stands in sharp contrast both as to the manner and the purpose of the picketing and as to the order entered against the defendants. First, the court's order enjoins only speech and expressive conduct *critical* of Franklin; it is not a reasonable time, place, and manner restriction having only an incidental burden on speech. Second, appellants' picketing served to inform rather than disrupt or intimidate. Third, appellants were urging the boycott of a business entity, Franklin, with whom they were primarily aggrieved. Thus the manner and purpose of the boycott were legal. Only if it were determined that appellants' statements were false could there be any liability and then only in a subsequent action at law. *See, Willing,* 488 Pa. 377, 393 A.2d 1155.

The lower court erroneously viewed the case as one which required the balancing of First Amendment and Article I, section 7 concerns against Franklin's right not to have unjustified interference in its economic opportunity and cited our decision in *Klebanoff v. McMonagle,* 380 Pa.Super. 545, 552 A.2d 677 (1988) to justify the balancing in which it engaged. In *Klebanoff,* demonstrators targeted a private residence and engaged in picketing which was clearly dis-

ruptive and continued for almost a year. By citing *Klebanoff*, the lower court incorrectly equated a constitutional privacy interest in one's own home—an interest which could be vindicated only by restoring it through injunctive relief—with Franklin's economic interest in selling the homes it had built. Franklin's economic interest can be adequately vindicated by an action at law to determine the truth or falsity of appellants' statements [9] and thus does not require the extraordinary measure of an injunction against appellant's expressive conduct.

We emphasize that, unlike *Klebanoff*, no one's privacy interests have been interfered with by appellant's actions. We note that suit has been brought by Franklin to protect its economic interest; other homeowners besides appellants are not party to it. Appellants did not picket or conduct demonstrations directly in front of their neighbors' homes. No invasion of privacy on the same scale as *Klebanoff* occurred.

Rather, appellants picketed the sales office and model home of Franklin, a business entity. It would, of course, be extraordinary for us to find that a *business* has a privacy interest in premises which are not only open to the public but onto which the business invites and solicits the public.

If appellants' statements are untrue, Franklin has an adequate remedy at law. The injunction, which violates both the state and the federal constitutions, should not have been granted.

Reversed and remanded. Jurisdiction relinquished.

KELLY, J., files concurring statement.

KELLY, Judge, concurring.

In light of the plethora of state and federal authorities collected by the majority which unequivocally establish that the content based prior restraint imposed in this case violat-

**9.** Even if it were found that appellants would be unable, as a practical matter, to satisfy a judgment which might be awarded to Franklin, that fact does not go towards the adequacy of the remedy at law. *Willing,* 488 Pa. 377, 393 A.2d 1155.

ed both the federal and Pennsylvania constitutions, I see no need to ground our decision on the fractured plurality decision in *Willing v. Mazzocone*, 488 Pa. 377, 393 A.2d 1155 (1978) (per Manderino, J.; Roberts, J., concurring, O'Brien, J., joins; Pomeroy, J., concurring; Eagen, C.J., dissenting; Nix and Larsen, JJ., noting dissent). I nonetheless, concur in the result.