411 A.2d 790

**RO–MED CONSTRUCTION COMPANY, INC., Appellant,**

**v.**

**CLYDE M. BARTLEY CO., INC., and Clyde M. Bartley, Individually.**

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed Oct. 12, 1979.

Charles W. Garbett, Ellwood City, for appellant.

George H. Hancher, Zelienople, for appellees.

Before PRICE, HESTER and MONTGOMERY, JJ.

HESTER, Judge:

Presently before the court is an appeal from the lower court's order granting summary judgment in favor of appellee.

We do not agree. We reverse and remand for proceedings consistent with this opinion.

The facts are as follows: Appellant instituted the within action in assumpsit seeking damages as a result of an alleged breach of an oral contract entered into on or about July 28, 1971 between the parties. Under the terms of said contract, appellee was to supervise, erect and construct a roadside rest building and water supply and sewage disposal systems in Mercer County, Pennsylvania in accordance with

plans and specifications supplied by the Pennsylvania Department of Transportation (Penn Dot).

The contract price agreed upon was $174,000 less costs of electrical and excavation work in the total amount of $35,-342.

Appellant was to advance all funds. In the event the amount actually expended was less than the contract price, the appellant was to pay appellee the difference as profit. If, however, the amounts actually expended by appellant exceeded the contract price, then appellee agreed to pay the difference to appellant at the completion of the project.

In its complaint, appellant alleges that the amount expended by it under the direction and control of the appellee exceeded the contract price in the amount of $59,658; hence this suit for $59,658.

In due course, appellee filed an Amended New Matter wherein it raised the defense of illegality of contract based on the factual assertion that the contract between the parties was a "subcontract" and since it (the appellee) was not "pre-qualified" pursuant to Penn Dot regulations,[1] the contract was void and unenforceable and it (appellee) was entitled to judgment against appellant.

The regulations[2] hereinabove referred to provide:

1. Lawfully adopted regulations are as binding on a court as a statute. *Pa. Human Relations Commission v. Norristown Area School District*, 20 Pa.Cmwlth. 555, 342 A.2d 464 (1975); *Herdelin v. Greenberg*, 16 Pa.Cmwlth. 405, 328 A.2d 552 (1974); *Good v. Wohlgemuth*, 15 Pa.Cmwlth. 524, 327 A.2d 397 (1974).

2. Act of Sept. 20, 1961, P.L. 1529 (No. 649), 36 P.S. 670–404.1, and regulations promulgated thereunder, particularly Section 611[A] and [B] above and Section 605A 5(a) which provides:
   SECTION 605—CLASSIFICATION
   5. "MISCELLANEOUS WORK"
   Includes such special types of work as painting of bridges and other structures; roadside development; demolition of buildings or other structures; plumbing, heating, and ventilating work; electrical installations; underground utilities; erection and installation of fabricated structural materials; guard fence; fencing; and other minor and incidental work.
   (a) Miscellaneous work as determined by the Chief Counsel of the Department, as not within the purview of Act No. 649 enacted

## SECTION 611—SUBCONTRACTORS

A.  All contractors proposing to engage in State Highway work as subcontractors must comply with all the foregoing Rules and Regulations in regard to prequalification and classification.

B.  No Contractor engaged in State Highway work under a contract with the Department will be permitted to sublet any part of the construction work to be performed under the terms of that contract to a subcontractor who has not been prequalified and classified in conformance with the above Rules and Regulations, except for those types of work excluded under Section 605A 5(a) of the regulations.

Following the taking of the depositions of the parties, appellee filed a Motion for Summary Judgment upon the theory that the contract as alleged was illegal and therefore unenforceable as a matter of law.

By Order of Court dated May 8, 1978, the lower court granted appellee's Motion for Summary Judgment. This appeal followed.

Pennsylvania Rules of Civil Procedure 1035(a) and (b) provide in relevant part:

Rule 1035. Motion for Summary Judgment

(a) After the pleadings are closed, but within such time as not to delay trial, any party may move for summary judgment on the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits, if any.

(b) The adverse party, prior to the day of hearing, may serve opposing affidavits. The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

September 20, 1961, may be excluded by the Chief Engineer from the requirements of these Regulations. When this is done the bid advertisement and proposal will so state.

In *Ritmanich v. Jonnel Enterprises, Inc.*, 219 Pa.Super. 198, 280 A.2d 570 (1970), we summarized the intent of Pa.R.C.P. 1035:

We are to accept as true all well pleaded facts in the non-moving parties' pleadings, as well as the admissions on file, giving to them the benefit of all reasonable inferences to be drawn therefrom; the record must be examined in the light most favorable to them; and in passing upon a motion for summary judgment, it is no part of our function to decide issues of fact but solely to determine whether there is an issue of fact to be tried and all doubts as to the existence of a genuine issue as to a material fact must be resolved against the party moving for summary judgment. (219 Pa.Super. at 203, 280 A.2d at 573).

■ The grant of summary judgment is appropriate only when the case is clear and free from all doubt. *Mallesky v. Stevens*, 427 Pa. 352, 235 A.2d 154 (1967). See also *Schacter v. Albert*, 212 Pa.Super. 58, 239 A.2d 841 (1968).

The lower court's grant of appellee's Motion for Summary Judgment is founded on the lower court's analysis that: "[T]he only issue to be determined is whether (appellant) could legally subcontract with (appellee), given (appellee's) non-prequalified status. If (Appellant) could not do so, (Appellee's) Motion for Summary Judgment is proper."

Thereafter, the lower court rejected appellant's argument that Regulation # 611 (as above quoted) does not render the contract in question unenforceable as a matter of law for the reason that the illegality complained of by appellee was simply collateral to a valid employment contract. The lower court dismissed this argument, and concluded: "An agreement which violates a statute or which cannot be performed without a violation of a statute is illegal and void." (Citations omitted).

■ There exists a critical factual issue, the resolution of which is certainly not clear and free from all doubt, which goes to the heart of the present litigation. Was the relation-

ship between appellant and appellee that of employer to employee or contractor to subcontractor? For the regulations upon which appellee based his defense of "illegality" may be applicable only when a *subcontractor* is not prequalified. There appears to be no language in the cited regulations which would prohibit appellant from engaging appellee *as an employee* who need not be prequalified.

The deposition of Angelo Medure, the President of appellant corporation, contains the following:

Q. What was the arrangement you made with Bartley at that time? . . .

A. Well, being that Red is not pre-qualified, which this is a common practice, there's nothing illegal about it, if your not pre-qualified with the Pennsylvania Department of Highways, then the General Contractor who is prequalified must carry your payroll and all materials must go through the General Contractor's office. (R. 6b and 7b)

Q. Was there a sub-contract entered between McCarl (plumbing subcontractor) and Bartley?

A. Not with McCarl and Bartley, no; they couldn't. They had to go through Ro-Med.

Q. Was there a sub-contract, to your knowledge, entered between Bartley and anyone else who worked on the project?

A. No, any sub-contract cannot go through Bartley because he wasn't pre-qualified; they could not go through Bartley. (R. 14b)

Q. How could you enter a contract with an unqualified sub?

A. We have to carry their payrolls. See any unqualified sub, we have to carry their payroll—payroll's got to go through our company. (R. 15b)

Q. Was Mr. Barley also carried as an employee of yourself for State records?

A. No.

Q. He wasn't given a title with Ro-Med?

A. He marked himself down as a Superintendent; for practical purposes he marked himself down as a Superintendent. He was not an employee of Ro-Med because he wasn't on the job as he should have been.

Q. What would have been the purpose of him utilizing that title?

A. For the State; he wasn't pre-qualified.

Q. That would have been *for your* benefit as well, then, is that correct?

A. Well, I guess it would be both our benefits. You just can't use him. (R. 19b)

Q. Was it Bartley's job at all to have anything to do with the payroll who worked for his portion of the project up there?

A. Bartley had a man working with him—all payroll has to be run through the construction office, but Bartley took care of whoever he had on the building, which was, I think, three carpenters, or whatever it was, and the laborers and iron workers, and that was all that was put in. (R. 22b)

The deposition of appellee Clyde M. Bartley, individually and in his capacity as President of appellee corporation similarly leads us to conclude that there exists a genuine issue of material fact (the real relationship between the parties, to-wit, employer to employee or contractor to subcontractor), *the existence of which* should have precluded the entry of summary judgment.

Q. And was this to be done on the same basis as the I-79 in that all of your men on the payroll were to be run through Ro-Med's payroll account?

A. Right. (R. 40a)

Q. What did you inform Penn Dot at that meeting?

A. I was supposedly an employee of Ro-Med, I didn't inform Penn Dot anything. I was with Angelo Medure. (R. 42a)

A. . . . and I told him at that time that I would *run* the job as I *run any other job.*

Q. Which means what? You were to be the Superintendent of the job?

A. Under Red Chapman.

Q. Who does Chapman normally work for?

A. He was the project engineer for Ro-Med.

Q. Does he know anything about building buildings?

A. I'm not a judge of what people know.

Q. Did you take orders from Red Chapman as to what went into the building?

A. Right. You have to take orders from a superior.

Q. Did you take orders from Red Chapman as to how to build this building?

A. I took orders at different times from Red Chapman.

Q. Who was in charge of building the building?

A. I was under Red Chapman. (R. 42a and 43a)

Q. I'm still not sure I understand what you said the arrangement was; that you would do the superintendent work?

A. I would supervise the building of the buildings under this General Superintendent. (R. 43a)

Q. Now you had a Superintendent up there of your own, did you?

A. Foreman. Carpenter out of the union hall.

Q. What was his name?

A. Ed Reynolds.

Q. You hired him?

A. Right.

Q. Although he was on Ro-Med's payroll?

A. Right.

Q. And did he keep a daily log of the men that worked there and the activities that went on?

A. Right.

Q. And were you generally his boss?

A. Between Red Chapman and I, yes. (R. 45a)

Q. Did Angelo pay all of the men you hired?

A. I don't know who paid them. Ro-Med paid them.

Q. You didn't pay them?

A. No sir.

Q. That was your arrangement with him, all that stuff was to go through their books?

A. The only arrangement I had with Medure or Ro-Med or anybody concerned with it, I would supervise the job and with their people.

Q. But you hired the people?

A. I called the union hall if that's what you want to say.

Q. And arranged the subcontractors?

A. With Chapman's approval, yes. (R. 51a)

Based upon the foregoing testimony, we conclude the entry of Summary Judgment was in error; accordingly, we reverse and remand for proceedings consistent with this opinion.

As a result of the foregoing, we need not address ourselves to the merits of the other issue raised by appellant as to whether the defense of illegality is appropriate in the within matter.

Reversed and remanded for proceedings consistent with this opinion.