## DiMarino v. Hauber

*Ralph J. DiMario*, pro se.
*Donald Applestein*, for defendant.

GARB, *J.*, July 6, 1992—Plaintiffs have appealed from our order of May 12, 1992, wherein we granted summary judgment for defendants.

This is a negligence action in which plaintiff Ralph J. DiMarino seeks damages for certain injuries incurred while he was engaged in construction work upon the premises of defendants. Plaintiff Jean DiMarino, the wife of Ralph J. DiMarino, seeks derivative damages as a result of the injuries to her husband. As has so often been stated, summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *McFadden v. American Oil Co.,* 215 Pa. Super. 44, 257 A.2d 283 (1969), and *Ro-med Construction Co. Inc. v. Clyde M. Bartley Inc.,* 270 Pa. Super. 420, 411 A.2d 790 (1979).

The record in this case establishes that on January 16, 1987, the plaintiff, Ralph J. DiMarino, was in the process of constructing a mezzanine and a staircase from the first floor upon the premises of the defendant, a gasoline service station. The plaintiff was assisted in this endeavor by his son. The staircase was temporarily attached to the mezzanine from the first floor by some nails. It had not been permanently affixed because it had not yet been placed in its permanent location. In the course of that morning's work, the defendant instructed his son to remove the nails from the staircase and place some supports under it so that it could be permanently placed. His son removed the nails but did not place the supports. Shortly thereafter, the plaintiff attempted to use the stairway, it collapsed, and he was injured. The defendant was not participating in the construction nor was he even at the scene at the time of the accident.

A possessor of land is not an insurer of the safety of those on his premises. As such, the mere existence of a harmful condition in a public place of business, or the mere happening of an accident due to such a condition is neither, in and of itself, evidence of a breach of a proprietor's duty of care to his invitees, nor raises a presumption of negligence. Therefore, in order to impose liability on a possessor of land, the invitee must present other evidence which tends to prove that the possessor

deviated in some particular from his duty of reasonable care under the existing circumstances. The invitee asserting the claim must introduce evidence which tends to prove either that the proprietor knew, or in the exercise of reasonable care, ought to have known of the existence of the harm causing condition. *Moultrey v. Great A&P Tea Co.,* 281 Pa. Super. 525, 422 A.2d 593 (1980).

These same principles apply where a contractor is engaged to perform construction or other types of similar services upon the property of the defendant. The duty under those circumstances is to warn the contractor against known dangers and such dangers as are discoverable with reasonable care. Where the danger is one created by the contractor who introduced equipment or other substances to the property, the property owner is not liable for injury sustained by the contractor caused by faulty equipment or other substances that the contractor brought onto the land. *Funari v. Valentino,* 435 Pa. 363, 257 A.2d 259 (1969).

In *Palenscar v. Michael J. Bobb Inc.,* 439 Pa. 101, 266 A.2d 478 (1970), the issue was liability of the property owner for injuries incurred by an electrical contractor called upon to make certain repairs to the electrical system upon the property. The court therein applies section 343 (1965) of the Restatement (Second) of Torts as defining the liability of a possessor land to an invitee particularly with respect to dangerous conditions known or discoverable by the possessor. Therein, the section is quoted as follows:

"A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable

care would discover the condition and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger."

In citing this section of the Restatement, the court states that the law of Pennsylvania does not impose liability if it is reasonable for the possessor to believe that the dangerous condition would be obvious to and discovered by his invitee. As such, in this case, the court held that the defendant would have no duty to warn an invitee, such as the plaintiff, of a danger which was more obvious to and more likely to be discovered by the plaintiff than by any employee of the defendant. Of particular significance to this case, the court, quoted from *Engle v. Reider*, 366 Pa. 411, 77 A.2d 621 (1951), as follows:

"[A]s an exception to the general rule requiring the owner or occupier of premises (contractee) to furnish a safe place of work to an independent contractor and the latter's employees, the owner or occupier is under no duty to protect them against risks arising from or intimately connected with defects of the premises ... which the contractor has undertaken to repair."

The case of *Crane v. I.T.E. Circuit Breaker Co.,* 443 Pa. 442, 278 A.2d 362 (1971), involved a law suit by an independent contractor for injuries incurred while engaging in construction work upon the defendant's premises. The court therein cited the general rubric heretofore set forth regarding the duties of a possessor of land and his duty of reasonable care to invitees upon the premises. The court therein further states that a possessor of land

who retains and exercises control over work, including construction work, entrusted to an independent contractor, is liable for harm caused by his failure to use reasonable care in the exercise of that control. However, the court in *Crane,* establishes that the principles governing the duty of a possessor of land to the employees of an independent contractor differ when the landowner or possessor does not retain control of the performance of the contracted work.

"In such a case, it is a general rule that a possessor of the land must still use reasonable care to make the premises safe or give adequate and timely warning of dangers known to him but unknown to the contractor or his employees.... *Finally, these duties cannot be imposed upon the possessor of land, if the defective conditions were created by the work of the independent contractor or his employees." Crane v. I.T.E. Circuit Breaker Co., supra.* (emphasis furnished)

Applying those principles to this case, it is clear that there is no liability on the part of defendants for the injury sustained by the plaintiff. Plaintiff was a contractor engaged in the construction of the mezzanine and stairs. He and his son were accomplishing that construction. At a time when the defendant was not even present and certainly not involved in the construction itself, plaintiff directed his son to remove the nails from the stairs and put bracing under them. The son followed his instructions but failed to put the bracing under the stairs. The plaintiff stepped upon the stairs and incurred his injury.

These facts are amply established by the following passages from the depositions in this case. The plaintiff testified that he instructed his son:

"Before these men go on their coffee break, go put legs on the stairs and pull the nails so that when they get off work—I mean 'when they go on their coffee break, two or three of them get together and will move it' the stairway right where I want it."

At the time this conversation occurred between the defendant and his son, the defendant had left and was in his office doing some other work. It should be noted that the last time the defendant is reported on the scene, he was on the mezzanine with the plaintiff and his son. The defendant descended the stairway without any difficulty. Subsequently in the course of the plaintiff's deposition, the following is set forth:

*Q.* "Okay, and where, after this conversation came to a close and Chuck goes downstairs to his office, where does your son go?"

*A.* "He's sitting there with me. I'm measuring different—making little diagrams. I got to do some cutting. I got to make the railing to go around the mezzanine."

*Q.* "Okay."

*A.* "And we were talking, and this, that and the other. In the meanwhile, he pulled the nails."

*Q.* "Your son?"

*A.* "Yeah, while I'm measuring and talking to him."

*Q.* "Okay."

*A.* "Without going down and putting the legs on."

Subsequently, the following appears in the plaintiff's deposition:

*Q.* "At any time between the time you guys broke off from your conversation and coffee until the accident did you see your son go down the stairs?"

*A.* "No."

*Q.* "Okay. What happened next? As I understand it, you were working on the rails."

*A.* "I finished the measuring. We walked toward the stairway. I took one step down. That was the end of me."

*Q.* "When you say the end of you, you mean the stairs collapsed?"

*A.* "That's right."

The deposition of Ralph DiMarino Jr. established the following:

*Q.* "Okay. Can you generally describe for me what kind of work you were doing for Chuck?"

*A.* "We were putting a mezzanine, a wooden mezzanine."

*Q.* "When you say 'we,' who aside from yourself was doing this work?"

*A.* "My father Ralph DiMarino was—was there also."

*Q.* "And was it just the two of you or was it anyone else helping you out?"

*A.* "Yeah, it was just the two of us working on that mezzanine."

*Q.* "Okay. Do you remember if Chuck, the guy that runs the place, was he doing any work—"

*A.* "No."

*Q.* "—on the mezzanine?"

*A.* "Not—at that particular time, no."

Subsequently, in the depositions of Ralph J. DiMarino Jr., the following appears:

*Q.* "Okay. Do you have any knowledge as we sit here today as to how or why the stairs collapsed?"

*A.* "I think because inadvertently temporary—temporary nails were pulled."

*Q.* "Okay. Do you have any idea who pulled the nails?"

*A.* "Basically I'd have to say it would either be my father or myself but I would say it was probably—I probably pulled them."

The foregoing amply demonstrates that the defendant breached no duty legally owed to the plaintiffs in this case. For that reason, summary judgment was entered.