## Kalikow v. Franklin Chalfont Associates

*Lawrence Kalikow,* pro se.
*Sharon Prevatt,* pro se.
*Jeffrey B. Albert* and *Deborah R. Popky,* for defendants.

GARB, *J.,* January 16, 1996—Defendants have moved for summary judgment. Summary judgment should be granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *McFadden v. American Oil Company,* 215 Pa. Super. 44, 257 A.2d 283 (1969) and *Ro-Med Construction Company Inc. v. Clyde M. Bartley Co. Inc.,* 270 Pa. Super. 420, 411 A.2d 790 (1979). Those standards have been met herein, and we will grant summary judgment for the defendants.

The record in this case establishes the following. Plaintiffs, Lawrence Kalikow and Beverly Kalikow, his wife, and Ronald Prevatt and Sharon Prevatt, his wife, commenced this civil action against attorney defendants, Louis J. Sinatra, Esquire, and Marc B. Kaplin, Esquire; their law firm, Lesser and Kaplin, P.C., attorney defendants and their clients, John Gebert and several business entities, to wit, Franklin Chalfont Associates; Franklin Realty Inc.; and FRP—64 Inc., Franklin. Plaintiffs seek recovery of damages under Pennsylvania wrongful use of civil proceedings statute, 42 Pa.C.S. §8351, et seq. and also upon an allegation of abuse of legal process by the aforesaid defendants.

This case came about as the result of an equity action instituted by Franklin by attorney defendants against plaintiffs in which Franklin sought to enjoin Kalikow and Prevatt and several of their neighbors from engaging in various conduct at Oxbow Ridge, a Franklin residential real estate community in New Britain Township.

On April 26, 1987, Kalikow entered into an agreement of sale with Franklin for the purchase of a new home

at Oxbow Ridge. The closing took place on October 2, 1987, and Kalikow continues to reside there.

On September 12, 1987, Prevatt entered into an agreement of sale with Franklin for the purchase of a home at Oxbow Ridge. Closing took place on May 6, 1988, and Prevatt continues to reside there.

Following the purchase and possession and occupancy of their homes, Kalikow and Prevatt complained to Franklin with respect to certain alleged defects in those homes.

In the spring of 1988, Gebert contacted defendant Kaplin, a principal in defendant Lesser and Kaplin, P.C. and Franklin's counsel of many years, seeking legal advice regarding Kalikow and Prevatt's alleged interference with Franklin's business. At the time he met with attorney defendants, Gebert related to attorney defendants the information in his possession, both personally known by him and related to him by various Franklin employees or others at the development regarding plaintiffs' alleged conduct and its impact on Franklin and the Oxbow community. Specifically, Gebert informed the attorney defendants that Kalikow and Prevatt engaged in abusive conduct, including using verbal intimidation and abusive language of Franklin and employees of Miller Shore and Guerra, the listing agent for Oxbow Ridge with offices in the Oxbow Ridge community. Gebert further informed attorney defendants that Kalikow and Prevatt, together with several other neighbors, posted signs on their property which were vulgar and which intended to impugn Franklin's reputation.

Defendant Kaplin, a real estate attorney, along with Neil Andrew Stein, Esquire, another member of defendant law firm, and also a real estate attorney met with Kalikow and Prevatt in an effort to determine

how Franklin could resolve their complaints about their individual homes and eliminate or reduce the damage allegedly being inflicted on Franklin's Oxbow Ridge development. These efforts were not successful, and Kalikow and Prevatt continued their conduct.

Based upon the information received from Gebert and after researching the pertinent legal issues, in or about the late spring of 1988, Stein prepared a draft complaint against Kalikow and Prevatt and certain of the neighbors who were also engaging in various conduct at Oxbow Ridge. The draft complaint was provided to Gebert who advised Stein that the factual content of the draft complaint was true, but chose not to pursue formal legal action at that time preferring to continue his attempt to resolve the dispute caused by Kalikow and Prevatt in a non-adversarial manner. Despite continued efforts by Gebert, Franklin and the defendant attorneys, Gebert reported to the attorney defendants that Kalikow and Prevatt continued to display obscene and derogatory signs at Oxbow Ridge and verbally abused and intimidated employees of both Franklin and Miller Shore and Guerra. Additionally, Gebert reported that during several weekends during the summer of 1988, Kalikow and Prevatt and several of their neighbors picketed at the sample home in Oxbow Ridge. It was reported by Gebert that during those picketing sessions, plaintiffs and their neighbors spoke to potential purchasers of Oxbow Ridge Homes in a manner which tended to impugn Franklin's reputation. Gebert further advised defendant attorneys that despite the fact that Franklin resolved many outstanding issues, Kalikow and Prevatt and several of their neighbors continued to display signs and verbally abuse and intimidate employees of Franklin and Miller Shore and Guerra. Gebert advised further that as a result of plaintiffs' conduct,

in particular as the result of their conversations with potential buyers of homes at Oxbow Ridge, from approximately January 21, 1989 through January 25, 1989, potential purchasers at Oxbow Ridge requested return of deposit monies. On or about January 25, 1989, at or about the time that plaintiffs' conduct intensified, defendant Gebert again requested that the attorney defendants determine whether any legal redress was available to Franklin with respect to plaintiffs' conduct. Based upon the foregoing facts related to them by Gebert, the attorney defendants, in particular defendant Sinatra, an attorney with more than 20 years experience in commercial and civil rights litigation, undertook and reviewed legal research regarding the possibility of obtaining an injunction and other relief against plaintiffs' conduct. Based upon their research, the attorney defendants advised Gebert that it would be possible to seek an injunction against plaintiffs in the state courts. In this regard, attorney defendants advised Gebert that success in obtaining such an injunction would be difficult, but not impossible, as legal authority existed which would support the issuance of the injunction under the facts as related to the attorney defendants by Gebert and others. In an effort to prevent further damage to its business and further discord in the Oxbow Ridge community, Gebert, based upon the advice of attorney defendants, decided to pursue an injunction prohibiting Kalikow and Prevatt and three other couples from continuing with conduct damaging to Franklin.

On February 6, 1989, attorney defendants, on behalf of Franklin, filed a complaint in equity in the Court of Common Pleas of Bucks County, together with a petition for special injunction seeking to enjoin plaintiffs' conduct. Defendants, in that action, including the plaintiffs in this matter now before this court, filed

preliminary objections in the nature of a demurrer to Franklin's complaint which were denied prior to commencement of the hearing on Franklin's petition.

A hearing consuming approximately three days on Franklin's petition for a preliminary injunction was held before the Honorable Ward F. Clark of this court on February 27 and 28 and on March 3, 1989. At the termination of that hearing, Judge Clark issued an order granting Franklin's petition for special injunction. Judge Clark also made findings of fact and conclusions of law.

Following the issuance of the injunction, Franklin was able to settle his claims with two of the five defendant families. These defendants agreed to abide by the terms of the injunction, and, in return, Franklin agreed not to seek damages against them and to make any necessary repairs to their homes.

On March 6, 1989, Kalikow and Prevatt filed a petition for interlocutory appeal of Judge Clark's order in the Pennsylvania Superior Court. Simultaneously, plaintiffs filed an application for stay with the trial court. On March 6, 1989, following a hearing, Judge Clark denied the application for a stay. Plaintiffs did not seek to appeal the denial of the stay.

On March 29, 1989, Franklin, having experienced some relief from plaintiffs' conduct, advised the Superior Court that it was willing to continue the stay of the injunction. On July 16, 1989, Franklin moved to have the injunction dissolved and the appeal dismissed as moot. Plaintiffs herein opposed that motion. Subsequently, plaintiffs moved for a permanent stay of the injunction including in their motion a request that the damages portion of the case be stayed also and that appeal continue. Franklin opposed this motion.

On April 10, 1990, a panel of the Superior Court reversed Judge Clark's order granting Franklin's petition for special injunction. See *Franklin Chalfont Associates v. Kalikow,* 392 Pa. Super. 452, 573 A.2d 550 (1990).

On March 25, 1991, plaintiffs commenced this action against defendants. On February 12, 1992, plaintiff commenced a civil action against defendant Kaplin which is essentially identical. After extensive discovery, this summary judgment motion was filed.

The tort of wrongful use of civil proceedings is found in the Judicial Code at 42 Pa.C.S. §8351 et seq. That section provides in relevant part as follows:

"(a) Elements of action.—a person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

"(1) he acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

"(2) the proceedings have terminated in favor of the person against whom they are brought; . . ."42 Pa. C.S. §8351.

42 Pa.C.S. §8352 addresses the question of "existence of probable cause." Therein, it is stated as follows:

"A person who takes part in the procurement, initiation or continuation of civil proceedings against another has probable cause for doing so if he reasonably believes in the existence of the facts upon which the claim is based, and either:

"(1) reasonably believes that under those facts the claim may be valid under the existing or developing law;

"(2) believes to this effect in reliance upon the advice of counsel, sought in good faith and given after full disclosure of all relevant facts within his knowledge and information; or

"(3) believes as an attorney of record, in good faith, that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party." 42 Pa.C.S. §8352.

The essence of the tort of wrongful use of civil proceedings is the institution of a civil action for a malicious purpose and without probable cause. *Rosen v. American Bank of Rolla,* 426 Pa. Super. 376, 627 A.2d 190 (1993). See also, *Hart v. O'Malley,* 436 Pa. Super. 151, 647 A.2d 542 (1994). A cause of action for wrongful use of civil proceedings requires a plaintiff to allege and prove the following three elements: (1) that the underlying proceedings were terminated in favor of the plaintiff; (2) that the defendant caused these proceedings to be instituted without probable cause; and (3) that the proceedings were instituted primarily for an improper purpose. *Kelly-Springfield Tire Company v. D'Ambro,* 408 Pa. Super. 301, 596 A.2d 867 (1991). A person has probable cause to bring an action when he reasonably believes in the facts on which it is based and in the viability of the legal theory under which it is brought. *Gentzler v. Atlee,* 443 Pa. Super. 128, 660 A.2d 1378 (1995). Furthermore, the existence of probable cause is a matter of law for the court to decide. *Gentzler v. Atlee, supra* and *Meiksin v. Howard Hanna Co. Inc.,* 404 Pa. Super. 417, 590 A.2d 1303 (1991).

With respect to both the attorney defendants and client defendants, the first requirement set forth in *Kelly-Springfield* has been established favorably to the plaintiffs. The underlying proceedings were terminated in favor of the plaintiffs when the Superior Court reversed

the injunction entered by Judge Clark. However, we believe that the second and third requirements have not been established.

With respect to the client defendants, we believe that this record establishes without contradiction that those defendants did not act in a grossly negligent manner but rather with probable cause, and more importantly, for a purpose to secure an adjudication of the claim on which the proceedings were based. See 42 Pa.C.S. §8351(a)(1). Furthermore, the record establishes without contradiction that those defendants reasonably believed that under the facts as they knew them the claim may be valid under existing law and, more importantly, came to believe this in reliance upon the advice of counsel sought in good faith and given after full disclosure of all relevant facts within the defendant's knowledge and information. See 42 Pa.C.S. §8352. Even though all of those facts which those defendants disclosed to counsel may be controverted to some extent by the affidavits of plaintiffs, this record establishes both that these defendants reasonably believed those facts and acted therefore in reliance upon the good faith advice of counsel. Furthermore, the issue of probable cause may likewise be viewed and considered by the fact that when the complaints were filed by the client defendants herein against plaintiffs herein, plaintiffs' preliminary objections were denied and overruled by the court. Furthermore, after three days of hearing, this court entered the injunction. See *Meiksin v. Howard Hanna Co. Inc., supra* wherein the court stated as follows:

"The existence of probable cause is also demonstrated by the fact that there was sufficient evidence of an oral extension to require that the existence of such an agreement be submitted to the jury for determination

in the action to recover the broker's commissions. This suggests *that there was competent evidence of sufficient quantity and quality to demonstrate probable cause for a reasonable belief that the action could be maintained. This belief was confirmed also by the court's denial of motions in the underlying action for summary judgment and compulsory nonsuit, motions which could have been granted only if there had been no competent evidence sufficient to maintain the action.* (emphasis supplied) *Id.* at 425, 590 A.2d at 1307.

With respect to the attorney defendants, the matter of probable cause is addressed in subsection (3) of section 8352 wherein it is stated that probable cause is found to exist if the defendant believes, as an attorney of record, in good faith "that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party." The aspect of the liability of the attorney defendants is addressed in section 674 of the Restatement (Second) of Torts, as cited with approval in footnote 6 in *Gentzler v. Atlee, supra.* Therein, in comment (d) it is provided as follows:

"An attorney who initiates a civil proceeding on behalf of his client or one who takes any steps in the proceeding is not liable if he has probable cause for his action; and even if he has no probable cause and is convinced that his client's claim is unfounded, he is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim. An attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

"If, however, the attorney acts without probable cause for belief in the possibility that the claim will proceed, and for an improper purpose, as, for example, to put pressure upon the person proceeded against in order to compel payment of another claim of his own or solely to harass the person proceeded against by bringing a claim known to be invalid, he is subject to the same liability as any other person . . . ."

Once again, the question of probable cause with respect to lawyer defendants is likewise a question of law for the court. *Meiksin v. Howard Hanna Co. Inc., supra.* An attorney of record has probable cause for initiating a civil action if he believes in good faith that his initiation of a civil cause is not intended merely to harass or maliciously injure the other party. *Hart v. O'Malley, supra* and *Kelly-Springfield Tire Co. v. D'Ambro, supra.* Mere negligence is not sufficient to maintain a cause of action against an attorney filing the lawsuit on behalf of his client. *Hart v. O'Malley, supra.* Furthermore, the law is well established that an attorney is entitled to rely in good faith upon the statement of facts made to him by his client, and is not under a duty to institute an inquiry for the purpose of verifying his statement before giving advice thereon. If the client falsifies the facts, there may be a liability which attaches to the client, but the lawyer is not liable if, without more, he acts in good faith upon the facts stated by the client.

The facts in this case immutably establish that the lawyer defendants acted upon the information they received from their client after having done significant legal research regarding those facts. They acted in good faith, and the facts are immutable that they did not

bring this action merely to harass or maliciously injure the plaintiffs herein. They instituted this lawsuit, opposed preliminary objections, and after a three day hearing, received an order of the court. Based upon this, we can find no basis for the imputation of liability upon either the attorney defendants or the client defendants.

Plaintiffs also seek damages on the theory of the common-law tort of abuse of process. This tort and "wrongful use of process," discussed above, are often confused but are distinct. As previously noted, "wrongful use of process" is defined by statute at 42 Pa.C.S. §8351 and arises when the defendant maliciously institutes proceedings, at a time when the defendant lacked the probable cause to institute those proceedings and that the proceedings terminated in favor of the plaintiff. The common-law tort of abuse of process involves the perversion of legal process after it has begun in order to achieve a result for which the process was not intended. *Shaffer v. Stewart,* 326 Pa. Super. 135, 473 A.2d 1017 (1984). Abuse of process is the use of legal process as a tactical weapon to coerce a desired result that is not the legitimate object of the process. *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020 (1987). In order to state a cause of action for abuse of process, it must be shown that the defendant used a legal process to accomplish a purpose for which the process was not designed. *Rosen v. American Bank of Rolla, supra,* and *Hart v. O'Malley, supra.* It is not enough that the defendant had bad or malicious intentions or that the defendant acted from spite or with an ulterior motive. *Rosen v. Tesoro Petroleum Corporation,* 399 Pa. Super. 226, 582 A.2d 27 (1990), *allocatur denied,* 527 Pa. 636, 592 A.2d 1303 (1991). There must be an act or threat not authorized by the process, or the process

must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action. *Rosen v. Tesoro Petroleum Corp., supra*. There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. *Shaffer v. Stewart, supra; Rosen v. American Bank of Rolla, supra; Al Hamilton Contracting Co. v. Cowder,* 434 Pa. Super. 491, 644 A.2d 188 (1994).

The clearly established facts on this record belie any basis for this cause of action. The obvious purpose of defendants' action in equity against these plaintiffs was to secure an order of court to enjoin them from the conduct in which they allegedly engaged. Although the defendants failed on appeal in that endeavor, it is patently clear that the relief requested was what they sought and was not used as a tactical weapon to coerce a desired result that was not the legitimate object of the process. See *McGee v. Feege, supra*. The legal process employed in that lawsuit was the proper process in order to secure the defendants' desired relief and was not used to accomplish a purpose for which the process was not designed. See *Al Hamilton Contracting Co. v. Cowder, supra*. Clearly, there was no illegitimate aim such as extortion, blackmail or to coerce or compel the plaintiff to take some collateral action. *Al Hamilton Contracting Co. v. Cowder, supra* and *Junod v. Bader,* 312 Pa. Super. 92, 458 A.2d 251 (1983). For these reasons, summary judgment must likewise be granted for the defendants on the cause of action arising from the common-law tort of abuse of process.

Finally, there is a symmetry between the lawsuit brought by these defendants against these plaintiffs which gave rise to the instant lawsuit, which is beguiling. The objection of plaintiffs herein to the lawsuit in which

they were the defendants and which constitutes the touchstone of this lawsuit was the infringement of their protected rights of free speech under the First Amendment of the United States Constitution. Although the trial court in that action granted the injunction, those protected rights were vindicated by the reversal in the Superior Court. In this lawsuit, we revisit the First Amendment to the United States Constitution, specifically, the right of redress of grievances. That right as embodied in the First Amendment of the United States Constitution includes the right of access to courts. *California Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) and *Hoeber v. Local 30,* 939 F.2d 118 (3d Cir. 1991). The fear of civil liability resulting from recourse to judicial procedures would have a chilling effect on citizens exercising their constitutional rights to access to the courts unless the body of law giving rise to causes of action for the use of judicial proceedings is not strictly invoked in order to achieve a proper constitutional balance. Article I, Section XI of the Pennsylvania Constitution likewise recognizes the right of the citizens of Pennsylvania to free and unencumbered access to the courts. See *Masloff v. Port Authority of Allegheny County,* 531 Pa. 416, 613 A.2d 1186 (1992). In effecting that balance of rights emanating from both the United States and Pennsylvania Constitutions, we believe that those constitutionally protected rights must be liberally construed.

For the foregoing reasons, we will grant summary judgment in favor of the defendants.

## ORDER

And now, to wit, January 16, 1996, it is hereby ordered that summary judgment is entered in favor of the defendants.