**Phillip J. MYERS, Plaintiff,**

**v.**

**WILKES–BARRE TWP., Chief Robert Brozowski, Carl Kuren, and Ronald Smith, Defendants.**

**Civil Action No. 3:00–2115.**

United States District Court, M.D. Pennsylvania.

Feb. 25, 2002.

Barry H. Dyller, Law Office of Barry H. Dyller Gettysburg House, Wilkes-Barre, PA, for Phillip J. Myers.

David P. Karamessinis, William J. Devlin, Jr., Devline & Devine, Conshohocken, PA, for Wilkes-Barre Tp., Robert Brozowski, Carl Kuren and Ronald Smith.

## MEMORANDUM AND ORDER

NEALON, Senior District Judge.

Presently before the court is a Motion for Summary Judgment by defendants, which was filed on December 26, 2001. (Doc. 21). Plaintiff submitted his brief in opposition on January 10, 2002. (Doc. 24), and defendants thereafter filed a Reply on January 31, 2002. (Doc. 31) The matter is now ripe for resolution. For the reasons stated below, the motion will be granted.

**Background**

Plaintiff, a Wilkes–Barre police officer, initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 against the Wilkes–Barre Township ("the Township"); its Chief of Police, Robert Browzowski ("Browzowski"); its Mayor, Carl Kuren ("Kuren"); and the Police Captain, Ronald Smith ("Smith") on December 7, 2000. (Doc. 1).[1] Plaintiff contends in Count I that he was unlawfully terminated as a part-time township police officer in retaliation for a memorandum in which he criticized a fellow employee. He maintains his termination abridges his First Amendment right to free speech. Plaintiff has also added a pendant state law claim in Count II alleging wrongful termination in violation of Pennsylvania public policy.

The complaint reveals that the Plaintiff commenced his employment as a part-time police officer in the Township in September, 1996. Id. at ¶ 9. In August, 1998, while Plaintiff was investigating a retail theft, Detective Stanley Szczupski was called upon, in accordance with police protocol, to process evidence believed to have been used in the crime. Id. at ¶ 10. Following the investigation, a suspect named Patrick Colleran was arrested and charged in connection with the crime. Id. The Colleran case was tried in the Luzerne County Court of Common Pleas on February 29, 2000. Id. at ¶ 11. Despite the fact that all police officers involved in the matter received subpoenas to testify, Detective Szczupski did not appear, however, the Commonwealth was successful in obtaining a conviction. Id.

On March 18, 2000, Plaintiff sent an internal memorandum to Defendant Brozowski expressing his dissatisfaction with the manner in which Szczupski handled the case. Specifically, he questioned Szczupski's inability to "pull" fingerprints at the scene and, additionally, his failure to appear to testify, which Plaintiff asserted potentially jeopardized a successful prosecution of the case.[2] Thereafter on March 21, 2000, Smith sent a letter to Plaintiff requesting that he resign his part-time

---

**1.** An additional defendant named in the complaint, Stanley Szczupski, a detective with the Wilkes–Barre Township police department, was dismissed pursuant to a stipulation of the parties on December 14, 2001 (Docs.19–20).

**2.** While the subpoenas were issued for February 29, 2000 and the Colleran case commenced on that date, witnesses were not going to be called until the morning of March 1, 2000. When informed that he should be present to testify at that time, Szczupski advised the assistant district attorney prosecuting the case that he was unavailable in the morning, but would be present to testify in the early afternoon of March 1, 2000. According to Plaintiff, Szczupski never appeared to testify. However, Szczupski testified at his deposition that he did appear but that the trial had been completed (Doc. 21, Exh. C, p. 32–33). Plaintiff's only rebuttal to Szczupski's testimony was "to my knowledge, Lieutenant Szczupski never showed up for court that day [but i]f he did, it was after the court recessed and the Commonwealth rested." (Doc. 21, Exh. D, p. 2).

position, stating that he had insufficient availability to work an increased number of hours. *Id.* at ¶ 14. Although he refused to resign, Plaintiff was removed from the work schedule and, on May 22, 2000, he received a letter, dated April 5, 2000, stating he would no longer be scheduled as a township police officer. (Doc. 1, ¶ 17). The instant action ensued. As mentioned previously, Plaintiff contends that his dismissal was improper because the memo was an exercise of his right to free speech and is protected by the First and Fourteenth Amendments as it involved an area of legitimate public concern.

**Discussion**

In ruling on a motion for summary judgment under Federal Rule of Civil Procedure 56(c), "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue of fact is "genuine" if there is sufficient evidence to enable a reasonable jury to find for the non-moving party, and a fact is "material" if it might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant bears the responsibility of identifying the bases for its motion and those parts of the record which support its conclusion that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on the motion, the Court must consider all facts in the light most favorable to the opposing party. *See Betz Laboratories, Inc. v. Hines,* 647 F.2d 402, 404 (3d Cir. 1981).

Plaintiff's Brief in Opposition to the motion does not dispute his status as an "at-will" employee and specifically states that the case is about retaliation for exercising First Amendment constitutional rights as well as wrongful termination in violation of public policy under Pennsylvania law.

*Count I First Amendment*

█ Public employees have a constitutionally protected right to speak on matters of public concern without fear of retaliation. *Rankin v. McPherson,* 483 U.S. 378, 383–84, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987); *Baldassare v. New Jersey,* 250 F.3d 188, 194 (3d. Cir.2001); *Feldman v. Phila. Hous. Auth.,* 43 F.3d 823, 829 (3d Cir.1994). In evaluating a public employee's retaliation claim for engaging in protected activity, a three-step process is employed. *Baldassare,* 250 F.3d at 194; *Green v. Phila. Hous. Auth.,* 105 F.3d 882, 885 (3d Cir.1997). A plaintiff must first demonstrate that the activity in question was protected. *Baldassare, supra* at 195. The speech must involve an area of legitimate public concern in order to fall under the shield of the First Amendment. *Id.* The plaintiff must also show that "his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." *Id; Pickering v. Bd. of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). These determinations are questions of law for the court. *Id.* (citing *Waters v. Churchill,* 511 U.S. 661, 668, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994)).

█ Once this has been demonstrated, plaintiff must then show the protected activity was a substantial or motivating factor in the alleged retaliatory action. *Id.* If he can satisfy these criteria, the public employer can rebut the claim by demonstrating that "it would have reached the

same decision ... even in the absence of the protected conduct." *Id.* (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). These latter inquiries present questions of fact to be determined by the fact-finder. *Id.*

■ Initially, therefore, a determination must be made as to whether the March 18, 2000 memorandum constitutes a matter of legitimate public concern so as to afford it constitutional protection. This requires the court to analyze the "content, form, and context of a given statement, as revealed by the whole record" before it can conclude whether the speech will be afforded First Amendment protection. *Connick v. Myers,* 461 U.S. 138, 147–48, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

■ The content of the speech may involve a matter of public concern if it attempts "to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Baldassare, supra,* at 195 (quoting *Holder,* 987 F.2d at 195); *Swineford v. Snyder Cty., Pennsylvania,* 15 F.3d 1258, 1271 (3d. Cir.1994). Based upon "the nature of their employment, speech by public employees is deemed to be speech about public concern when it relates to their employment so long as it is not speech 'upon matters of only personal interest.'" *Swineford,* 15 F.3d at 1271 (quoting *Connick, supra,* at 147, 103 S.Ct. 1684). However, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by the judiciary in the name of the First Amendment when employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community. *Connick, supra,* at 146, 103 S.Ct. 1684. Moreover, speech that presents "a situation in which a public employee has filed a complaint about an isolated incident of what he or she perceived to be inappropriate conduct on the part of a non-supervisory co-worker" does not share the level of importance as other circumstances where courts have found the speech to regard matters of public concern. *Azzaro, supra,* at 978–79 n. 4. *Cf. Baldassare, supra* (investigator's speech in connection with investigation of fellow police corruption wrongdoing involved area of legitimate public concern); *Feldman v. Phila. Hous. Auth.,* 43 F.3d 823 (3d Cir.1995)(compilation and distribution of public auditor's report of improprieties by director of county agency involved area of legitimate public concern).

In the present matter, the March 18, 2000 memo is not a discussion of a practice or policy of the Wilkes–Barre Township police department; it is a complaint regarding plaintiff's evaluation of Szczupski's performance. *See Connor v. Clinton Cty. Prison,* 963 F.Supp. 442, 449 (M.D.Pa. 2001), McClure, J. In the introductory paragraph, Plaintiff asserts "[m]y concern however, is with the involvement and lack of cooperation that *I have received* from Lieutenant Stan Szczupski." (Doc. 21, Exh. D, p. 1)(emphasis added). After supplying the particulars about Szczupski's conduct in the Colleran case, Plaintiff concludes his comments, as follows: "*I* find it confusing that a supervisor, the one that *I* am suppose [sic] to learn from, the one that *I* am suppose [sic] to take orders from and above all the one that *I* am suppose [sic] to respect felt that getting lockers in Philadelphia is more important in testifying in a case that *I* worked LONG and HARD on." *Id.* at p. 2 (emphasis added). It is obvious that Plaintiff is complaining about the lack of cooperation he had received on a singular case. It does not appear that Plaintiff was speaking "as a citizen upon matters of public concern" but more so on his personal dissatisfaction with the conduct of a superior. *Connick, supra,* at 147, 103 S.Ct. 1684. He did not

seek "to inform the public" that Szczupski or the police department were not discharging their duties in the prosecution of a criminal case. *Id.* at 148, 103 S.Ct. 1684. The facts of this case are remarkably similar to the facts in *Connick,* including the surname of the Plaintiff. *Connick* concluded that complaints concerning the lack of confidence and trust that plaintiff and other employees had in their superiors did not fall under the rubric of "public concern." Id. As here, the plaintiff in *Connick* did not seek to bring to public light actual or potential wrongdoing or breach a public trust on the part of her superiors. *Id.* Neither Szczupski's ability to obtain fingerprints,[3] his initial faulty recollection of the Colleran case, nor his absence at the trial, especially when he notified others he would be away, show anything more than Plaintiff's perceived deficiencies in the detective's lax approach to his position. These complaints do not concern a dissatisfaction with the department or its policies, and, moreover, do not raise genuine questions as to the state of public trust or welfare. A single assertion that the detective failed to appear in accordance with a subpoena and thereby placed a criminal prosecution in jeopardy, without more, is insufficient to warrant First Amendment protection. Such shortcomings fail to rise to the level of matters of interest to the community upon which it is essential that public employees be able to speak out freely without fear of retaliatory dismissal. *Connor, supra,* at 449 (citing *Connick* at 149, 103 S.Ct. 1684). A complaint regarding, at most, an undermotivated employee, even a police detective, does not implicate such political, social or community interests so as to justify judicial review of the propriety of the termination.

Szczupaki's decision to delay his response to a subpoena in order to go to Philadelphia to "get lockers" can hardly be described as a action against the public good that clearly tends to injure public confidence in the purity of the administration of the law. In conclusion, the court finds that Plaintiff's March 18, 2000 memo does not involve matters of legitimate public concern that warrants First Amendment protection.

### Count II Wrongful Termination

■ To establish a state law claim under Count II, Plaintiff must establish a public policy exception to the at-will employee doctrine. This exception must find its source in the state constitution, in legislation, in administrative regulations or in judicial decision. *Jacques v. Akzo Int'l Salt, Inc.,* 619 A.2d 748, 422 Pa.Super. 419 (1993). It is applied only in extremely limited circumstances where there is a violation of a clear mandate of public policy which has been defined as a "principle of law which abhors actions against the public good [and] clearly tends to injure the public confidence in the purity of the administration of the law." *In re Funds in the Possession of Conemaugh Twp. Supervisors,* 724 A.2d 990 (Pa.Cmwlth.1999).

By way of example, "an employer (1) cannot require an employee to commit a crime, (2) cannot prevent an employee from complying with a statutorily imposed duty, and (3) cannot discharge an employee when specially prohibited from doing so by statute." *Donahue v. Federal Express Corp.,* 753 A.2d 238, 244 (Pa.Super.2000) (citing *Spierling v. First Am. Home Health Servs., Inc.,* 737 A.2d 1250, 1252

---

**3.** Defendants assert that the purpose of Szczupski's expected testimony in the Colleran case was that he attempted to obtain fingerprints but was unsuccessful. The fact that both Plaintiff and Sergeant Wardle offered this testimony during the trial casts doubt on the potential jeopardy Szczupski may have placed on the prosecution's case by failing to appear. (Doc. 21, ¶ 10).

(Pa.Super.1999); and *Hennessy v. Santiago,* 708 A.2d 1269, 1273 (Pa.Super.1998)). Additionally, courts may, in an appropriate case, "announce that a particular practice violates public policy, even in the absence of a legislative pronouncement to that effect." *Id.* (citing *Shick v. Shirey,* 552 Pa. 590, 716 A.2d 1231, 1237 (Pa.1998) (recognizing a cause of action under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits)). The court's power to announce public policy, however, is limited, and "is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Id.*

Plaintiff's dismissal because he complained about Szczupski's performance does not implicate a clear violation of public policy. Consequently, Count II will be dismissed.[4] An appropriate order follows.

---

4. As Defendant avers, and Plaintiff concedes, a viable claim is not recognized for due process violation for any failure to afford Plaintiff a hearing on his termination of employment inasmuch as part-time police officers in the Commonwealth of Pennsylvania do not have a property interest in their positions. Thus this allegation has been withdrawn.